UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
POLICEMEN'S ANNUITY AND BENEFIT FUND :
OF THE CITY OF CHICAGO, LABORERS' :      12 Civ. 2865 (KBF)
PENSION FUND AND HEALTH AND WELFARE :
DEPARTMENT OF THE CONSTRUCTION AND :     OPINION & ORDER
GENERAL LABORERS' DISTRICT COUNCIL OF :
CHICAGO AND VICINITY, IOWA PUBLIC :
EMPLOYEES' RETIREMENT SYSTEM, and :
ARKANSAS PUBLIC EMPLOYEES' :
RETIREMENT SYSTEM, :
                                         :
                        Plaintiffs, :
                                         :
         -v- :
                                         :
BANK OF AMERICA, NA (as Trustee Under :
Various Pooling and Servicing Agreements), and :
U.S. BANK NATIONAL ASSOCIATION (as :
Trustee Under Various Pooling and Servicing :
Agreements), :
                                         :
                        Defendants. :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: SEP 2 3 2013

KATHERINE B. FORREST, District Judge:

This case was originally filed on April 11, 2012. (ECF No. 1.) An Amended Complaint was filed on January 4, 2013 (ECF No. 50), and a Second Amended Complaint ("SAC") was filed on January 15, 2013 (ECF No. 57). In two prior rulings on the adequacy of the pleadings,[1] the Court noted that at its core, this is a breach of contract case. That characterization has not changed. What has changed is the development of a sufficient factual record upon which defendant U.S. Bank

---

[1] Opinion & Order re: Motion to Dismiss, December 7, 2012 (ECF No. 46); Opinion & Order re: Motion to Dismiss SAC, May 6, 2013 (ECF No. 74).

National Association ("U.S. Bank"), as Trustee under various pooling and servicing agreements ("PSAs"), now moves for partial summary judgment.[2]

Plaintiffs' claims involve 19 separate trusts in which they invested (the "Covered Trusts"). Plaintiffs allege that they purchased certificates in the Covered Trusts, which include groups of mortgage-backed securities ("MBS"). Among the governing documents between the depositor, servicer, and trustee of the MBS at issue were various PSAs. In their two-count SAC, plaintiffs claim that both defendants breached the terms of the PSAs as well as statutory duties owed pursuant to the Trust Indenture Act of 1939 ("TIA"), 15 U.S.C. §§ 77aaa et seq. According to plaintiffs, pursuant to the TIA, defendants were required to notify certificate holders of breaches in the PSA.

Both U.S. Bank and Bank of America, N.A. ("B of A") have been sued in their capacities as trustees of the Covered Trusts. As it turns out, however, the undisputed facts demonstrate that U.S. Bank could not have breached a PSA or the TIA as to 16 of the 19 trusts, because U.S. Bank was never a trustee of those trusts during the period of time when plaintiffs owned certificates in them. There simply were no contractual obligations flowing from defendant U.S. Bank to plaintiffs pursuant to the PSAs for the 16 trusts, and therefore no damages may be attributable to breaches of the PSAs or to corresponding breaches of the TIA with

---

[2] The Court notes plaintiffs' assertion that this motion is premature given the limited amount of discovery that they have received from U.S. Bank on certain issues. The Court disagrees. For the reasons set forth herein, it is clear that the factual record necessary to resolution of this motion is sufficient. Indeed, plaintiffs do not dispute a single fact proffered by defendant in support of this motion, and no further facts are necessary.

2

respect to those same 16 trusts. Thus, plaintiffs are unable to maintain a claim for breach of contract against U.S. Bank as to those 16 trusts.

Accordingly, and for the reasons set forth below, defendant U.S. Bank's motion for partial summary judgment is GRANTED.

I. FACTS

It is the rare case that a movant for summary judgment proffers a Statement of Undisputed Material Facts pursuant to Local Rule 56.1 as to which there is truly no dispute. The stars have here aligned, however, and this is just such a case. While plaintiffs do not dispute any of the facts set forth below, they vigorously dispute whether the record is sufficiently developed and what legal conclusions can be drawn from these facts.

U.S. Bank is currently the trustee for the following 16 residential mortgage-backed securitization trusts:

- WaMu Mortgage Pass-Through Certificates Series 2006-AR8 Trust;
- WaMu Mortgage Pass-Through Certificates Series 2006-AR10 Trust;
- WaMu Mortgage Pass-Through Certificates Series 2006-AR11 Trust;
- WaMu Mortgage Pass-Through Certificates Series 2006-AR12 Trust;
- WaMu Mortgage Pass-Through Certificates Series 2006-AR14 Trust;
- WaMu Mortgage Pass-Through Certificates Series 2006-AR16 Trust;
- WaMu Mortgage Pass-Through Certificates Series 2006-AR18 Trust;
- WaMu Mortgage Pass-Through Certificates Series 2007-HY1 Trust;

- WaMu Mortgage Pass-Through Certificates Series 2007-HY2 Trust;
- WaMu Mortgage Pass-Through Certificates Series 2007-HY3 Trust;
- WaMu Mortgage Pass-Through Certificates Series 2007-HY4 Trust;
- WaMu Mortgage Pass-Through Certificates Series 2007-HY6 Trust;
- WaMu Mortgage Pass-Through Certificates Series 2007-HY7 Trust;
- WaMu Mortgage Pass-Through Certificates WMALT Series 2006-5 Trust;
- WaMu Mortgage Pass-Through Certificates WMALT Series 2006-AR2 Trust; and
- WaMu Mortgage Pass-Through Certificates WMALT Series 2006-AR6 Trust.

(Pls.' Resp. to Def. U.S. Bank Nat'l Assoc.'s Rule 56.1 Statement of Undisputed Material Facts in Supp. of Mot. for Partial Summ. J., "Pls.' RSOF," ECF No. 113, ¶ 1.)

When the securitization transactions involving the Covered Trusts closed, the trustee for each of the Covered Trusts was LaSalle Bank National Association ("LaSalle"). (Id. ¶ 2.) In or about 2007, B of A acquired LaSalle and became trustee of the Covered Trusts. (Id. ¶ 3.) In or about February 2009, B of A resigned as trustee of one of the Covered Trusts, the WMALT 2006-5 Trust. (Id. ¶ 4.) In February 2009, U.S. Bank became trustee for the WMALT 2006-5 Trust. (Id. ¶ 5.) The appointment of U.S. Bank as trustee for the WMALT 2006-5 Trust was memorialized in an Instrument of Appointment and Acceptance of Successor Trustee, dated February 9, 2009. (Affidavit of Jessica Elliott, July 26, 2013 ("Elliott Aff") (ECF No. 109) Ex. A.) (Pls.' RSOF ¶ 6.)

4

Separately, in or about December 2010, U.S. Bank acquired B of A's securitization trust business and became trustee for the fifteen trusts (other than WMALT 2006-5) listed above. (Pls.' RSOF ¶ 7.)

U.S. Bank's acquisition of B of A's securitization business is memorialized in a Purchase Agreement by and among [B of A], Bank of American (GSS) Limited, Bank of America National Trust Delaware, U.S. Bank, Elavon Financial Services Limited, and U.S. Bank Trust National Association, dated November 11, 2010 ("Purchase Agreement") (Elliott Aff. Ex. B). (Pls.' RSOF ¶ 8.)

Those sixteen trusts (referred to herein as the "MSJ Trusts") are at issue on this motion for partial summary judgment. The named plaintiffs in this action sold their certificates in the 16 MSJ Trusts before U.S. Bank became trustee for those trusts. Plaintiffs began purchasing their certificates in the MSJ Trusts in 2006, and the last certificate in any of the MSJ Trusts was sold in June 2010. As set forth above, U.S. Bank did not acquire B of A's securitization business until December 2010.

Both the Instrument of Appointment, which relates (on this motion) solely to the WMALT 2006-5 Trust, and the Purchase Agreement, which relates (on this motion) to the remaining 15 MSJ Trusts, contain provisions regarding assumed liabilities.

The Instrument of Appointment states:

> The parties hereto[3] agree that this Agreement does not constitute a waiver of any obligation or liability which the Predecessor Trustee may have incurred in connection with its serving as Trustee, Paying Agent, Authenticating Agent, or Certificate Registrar under the Pooling Agreement or an assumption by the Successor Trustee of any liability of the Predecessor Trustee arising out of any actions or inaction by the Predecessor Trustee under the Pooling Agreement.

(Elliott Aff., Ex. A ¶ 12.) This agreement was dated February 9, 2009. (Elliott Aff., at 2.)

The Purchase Agreement provides:

"Assumed Liabilities" means, collectively:

> (1) . . . all liabilities and duties of any Seller relating in any matter to, or arising out of, the Rights with respect to any Relationship (to the extent conveyed by the Buyer at the Effective Time), the administration of such Relationship or the Governing Instruments relating to such Relationship, in each case to the extent arising from and after, and relating to the period after the Succession Time for such Relationship.

(Elliott Aff., Ex. B, at 4.) Excluded Liabilities are defined as, inter alia, "all liabilities and obligations arising from the operation of the Business or BA Trustees Limited prior to the Effective Time. (Id. at 10.) "Effective Time" is defined as 11:59 p.m., December 30, 2010. (Id. at 28.) "Succession Time" is defined as the Effective Time for any Relationship.[4]

---

[3] The parties included JP Morgan Chase Bank, National Association as Servicer, U.S. Bank as Successor Trustee and B of A, successor by merger to LaSalle as Predecessor Trustee. (Elliott Aff. Ex. A, at 1.)

[4] "Relationships" was defined to include any "appointments of the Business" being purchased, as set forth on an appended schedule—but excluding appointments as trustee as to the MSJ Trusts. (Id. at 15.)

6

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment may not be granted unless the movant shows, based on admissible evidence in the record placed before the court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory

7

statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

III. ARTICLE III STANDING

Article III standing derives from the constitutional limitation on the subject matter jurisdiction of federal courts to cases and controversies. U.S. Const. art. III; see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Article III standing "serves to identify those disputes which are appropriately resolved through the judicial process." Whitmore v. Arkansas, 495 U.S. 149, 155 (1990). At its core, standing asks whether there is a case or controversy between the parties before the Court. Id.

The "irreducible constitutional minimum of standing contains three elements": (1) injury in fact, (2) "a causal connection between the injury and the conduct complained of," and (3) likelihood that the injury will be redressed by a favorable decision. Lujan, 504 U.S. at 560–61. The injury must also be "fairly traceable" to the conduct of the defendant rather than the action of some

8

independent third party. Id.; see also Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 41–42 (1976).

The elements of Article III standing are not mere pleading requirements but are rather an "indispensible part of the plaintiff's case." Lujan, 504 U.S. at 561. "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." Id. Furthermore, plaintiffs may not rest on mere allegations to establish sufficient standing, but rather must set forth specific facts to support their claim. Id.

"Class standing"—the doctrine governing whether a named plaintiff may represent the interests of a class—is different from Article III standing. In the class action context, the Second Circuit has held that it is possible to have one and not the other. See, e.g., NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145, 158 (2d Cir. 2012). In NECA-IBEW, the court held that "[t]o establish Article III standing in a class action . . . for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will inquiry shift to a class action analysis.'" Id. (citing Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 241 (2d Cir. 2007)). Put another way, even if a named plaintiff has a case or controversy, that does not mean that he or she may represent the interests of a class. See Sosna v. Iowa, 419 U.S. 393, 403 (1975).

Defendant U.S. Bank urges this Court to find no triable issue of fact as to whether Plaintiffs have Article III standing with respect to the 16 MSJ Trusts at issue and to dismiss plaintiffs' claims on those Trusts. In response, plaintiffs argue that this conflates "class standing"—which has not yet been briefed—with Article III standing.

In fact, neither party has the argument quite right. As set forth at the outset of this section, Article III standing concerns whether there is a sufficient case or controversy such that it is appropriate for the parties to bring their troubles before a federal court for adjudication. A little bit of standing will go a long way. "Standing simply means that the plaintiff is entitled to walk through the courthouse door and raise his grievance before a federal court." Baur v. Veneman, 352 F.3d 625, 643 (2d Cir. 2003) (internal quotation marks omitted). Plaintiffs have filed only two causes of action: one count for breaches of duties owed pursuant to the TIA and one count for breaches of the PSA. Issues as to all 19 trusts are included in each count. Thus, plaintiffs' "case" with respect to the 19 trusts is one case. Any liability and damages determinations would require a trust-by-trust analysis—but that is separate from standing.

U.S. Bank does not contest that plaintiffs do have Article III standing with respect to three of the overall 19 trusts at issue in the litigation. Plaintiffs have thus established their Article III standing with respect to plaintiffs' "case" against defendant U.S. Bank in the First and Second Causes of Action.

U.S. Bank is correct in the strict sense that plaintiffs could not establish Article III standing merely on the basis of the 16 MSJ Trusts (had they sued merely as to those) because, as set forth below, there is no injury traceable to defendant's conduct with respect to those 16 MSJ Trusts. However, that does not lead to the result defendant U.S. Bank urges, which is that plaintiffs cannot claim damages as to the 16 MSJ Trusts due to that lack of "standing." Damages follow from a liability determination. That is because the question of "standing" relates not to the question of plaintiffs' damages on any particular claim, but to their ability to be heard on some claim in the first place. Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 484 (1982) ("The requirement of standing focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated."). Plaintiffs need not rely on those 16 trusts to establish standing, as they argue they have an injury traceable to the other three trusts. Thus, a determination that plaintiffs could not establish Article III standing with respect to the 16 MSJ Trusts is neither here nor there: plaintiffs have already found the basis for their standing to get into federal court elsewhere.

Accordingly, were only the 16 MSJ Trusts at issue, the Court would agree that plaintiffs lack Article III standing. But they are not all that is at issue. What defendant really seeks is a determination that there is no triable issue as to whether plaintiffs can claim damages as to the 16 MSJ Trusts. They can and will get that determination—on a different basis, as set forth below.

11

IV.   <u>BREACH OF CONTRACT</u>

Plaintiffs claim that U.S. Bank breached its obligations under the PSA and, by failing to notify the certificate holders (plaintiffs) of those breaches, also breached the TIA. On this motion, defendant U.S. Bank argues that there is no triable issue of fact as to whether it breached the PSAs relating to the 16 MSJ Trusts: it could not have.

To establish a breach of contract, plaintiffs must demonstrate (1) the existence of a binding contract between plaintiffs and U.S. Bank, containing promises to perform, (2) a breach by defendant U.S. Bank of a promise to perform owed to plaintiffs, and (3) that plaintiffs were damaged by U.S. Bank's failure to perform its contractual obligations. <u>See, e.g.</u>, <u>RCN Telecom Servs., Inc. v. 202 Centre St. Realty LLC</u>, 156 F. App'x 349, 350–51 (2d Cir. 2005).

Plaintiffs have not raised a triable issue of fact as to the existence of obligations that defendant U.S. Bank owed to plaintiffs with respect to the 16 MSJ Trusts. U.S. Bank's obligations were derived solely from its position as trustee. But the uncontroverted facts are that plaintiffs had sold their certificates in each of the 16 MSJ Trusts prior to the time that U.S. Bank became a trustee with respect to any of the 16 MSJ Trusts. In addition, the relevant contractual documents (the Instrument of Appointment and the Purchase Agreement) unambiguously leave any liability for any breaches of the predecessor trustee's obligations (if any) with that predecessor trustee.

In the absence of any binding obligations, there can be no breach; and in the absence of a breach by defendant, there can be no damage traceable to any action by defendant U.S. Bank. And without a breach by U.S. Bank or damages traceable to a breach by U.S. Bank with respect to the 16 MSJ Trusts, summary judgment is entirely appropriate.[5]

## CONCLUSION

For the reasons set forth above, defendant U.S. Bank's motion for partial summary judgment is GRANTED.

The Clerk of the Court is directed to terminate the motion at ECF No. 106.

SO ORDERED:

Dated:     New York, New York
           September 20, 2013

                                        /s/ K. B. Forrest
                                    _____
                                        KATHERINE B. FORREST
                                        United States District Judge

---

[5] Since the breaches of the TIA require breaches of the PSAs, U.S. Bank is entitled to partial summary judgment as to the First Cause of Action insofar as it relates to the 16 MSJ Trusts as well.