UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

POLICEMEN'S ANNUITY AND BENEFIT            :
FUND OF THE CITY OF CHICAGO, *et al.*,      :      Case No. 1:12-cv-02865-KBF
                                            :
                     Plaintiffs,            :      ECF Case
                                            :
         -against-                          :
                                            :
BANK OF AMERICA, N.A. (as Trustee           :
Under Various Pooling and Servicing         :
Agreements) and U.S. BANK                   :
NATIONAL ASSOCIATION (as Trustee            :
Under Various Pooling and Servicing         :
Agreements),                                :
                                            :
                     Defendants.            :

-------------------------------------------------------- X

# MEMORANDUM OF LAW OF U.S. BANK NATIONAL ASSOCIATION IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

<div style="margin-left:40%">

Michael S. Kraut
Kevin T. Rover
John M. Vassos
MORGAN LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York  10178-0600
Tel:  (212) 309-6000
Fax:  (212) 309-6001

*Attorneys for Defendant*
*U.S. Bank National Association*

</div>

## PRELIMINARY STATEMENT

This motion for partial summary judgment asks the Court to apply portions of its September 23, 2013 and December 7, 2012 Orders to the Consolidated Third Amended Class Action Complaint ("Consolidated Complaint" or "Consol. Compl."). The application of those orders to the Consolidated Complaint provides the bases for dismissal of Plaintiffs' claims against Defendant U.S. Bank National Association ("U.S. Bank") with respect to 23 of the 35 trusts at issue in this case (each a "Trust" and collectively the "35 Trusts") because Plaintiffs did not own certificates in the 23 Trusts when U.S. Bank was the Trustee. The Orders also provide the basis for a ruling that Plaintiffs lack class standing to assert claims against U.S. Bank with respect to those 23 Trusts.

First, pursuant to the Court's September 23, 2013 Order, the Court should dismiss the claims against U.S. Bank with respect to the 23 trusts as to which Plaintiffs either sold their certificates *before* U.S. Bank became trustee or have stated that they are no longer pursuing claims against U.S. Bank (the "23 No-Plaintiff Trusts"). As this Court previously held, Plaintiffs who did not own certificates in the Trusts at issue while U.S. Bank was the trustee cannot maintain claims for breach of contract and violation of the Trust Indenture Act (the "TIA") against U.S. Bank because there "simply were no contractual obligations flowing from [D]efendant U.S. Bank to [P]laintiffs . . . ." (Sept. 23, 2013 Order 2 (ECF No. 133).)

Second, pursuant to the Court's December 7, 2012 Order, Plaintiffs do not have class standing to assert claims against U.S. Bank with respect to the 23 No-Plaintiff Trusts. In its December 7, 2012 Order, the Court held that a Plaintiff only has class standing to assert claims on behalf of certificateholders of trusts in which the Plaintiff "purchased certificates." (Dec. 7 Order 17 (ECF No. 46).) Because Plaintiffs did not hold certificates in the 23 No-Plaintiff Trusts

at any time while U.S. Bank has been the trustee, or held while U.S. Bank has been trustee but is not asserting a claim, Plaintiffs do not have class standing to maintain claims against U.S. Bank with respect to the 23 No-Plaintiff Trusts.

## I.   BACKGROUND

Plaintiffs are institutional investors who collectively purchased certificates in 35 different residential mortgage-backed securitization trusts between 2005 and 2008.  (Consol. Compl. ¶ 1, Exs. A-J, as amended.)[1]  LaSalle National Association ("LaSalle") was the trustee for the Trusts when they were formed and the securitization transactions closed.  (Sept. 23 Order 4; Consol. Compl. ¶ 26.)  U.S. Bank was not involved in those transactions.  In 2007, Defendant Bank of America, N.A. ("BANA") acquired LaSalle and became trustee for the 35 Trusts.  (Sept. 23 Order 4; Consol. Compl. ¶ 26.)

In February 2009, BANA resigned as trustee for five of the 35 Trusts.  (*See* Consol. Compl. ¶ 27; Decl. of Michael S. Kraut ("Decl.") Ex. A ¶ 1; *see also* Exs. 2 and 3.)  The servicer for the five Trusts appointed U.S. Bank as the successor trustee.  (*See, e.g.*, Decl. Ex. A ¶ 1.) The appointments became effective following the execution of the Instruments of Appointment and Acceptance of Successor Trustee between JPMorgan Chase Bank, National Association as the Servicer for the five Trusts, BANA as Predecessor Trustee for the five Trusts, and U.S. Bank as Successor Trustee for the five Trusts (the "Instruments of Appointment").  The Instruments of Appointment specifically provide that U.S. Bank as Successor Trustee did not assume ***any***

---

[1] In an abundance of caution, this motion addresses all 35 Trusts that are the subject of the Consolidated Complaint, even though no Plaintiff continues to assert a claim with respect to one of the Trusts.  In the Consolidated Complaint, Plaintiffs asserted claims with respect to 35 different trusts.  In Exhibit A to Plaintiffs' Memorandum of Law in Support of their Motion for Class Certification, Plaintiffs disclose that Plaintiff Mississippi Public Employees' Retirement System is no longer asserting claims with respect to its investment in WaMu Mortgage Pass-Through Certificates Series 2006-AR17.  No other Plaintiff claims to have held certificates in that Trust, and, therefore, Plaintiffs' motion for class certification only addresses 34 Trusts.

liability of the Predecessor Trustee (BANA) arising out of any actions or omissions of the Predecessor Trustee under the Pooling and Servicing Agreements ("PSAs"). (*See* Sept. 23 Order 6; *see, e.g.*, Decl. Ex. A ¶ 12.)

In December 2010, ███████████████████████████████████████████ ████████ U.S. Bank acquired BANA's securitization trust business. (*See* Sept. 23 Order 5; Consol. Compl. ¶ 27; Decl. Ex. B.)  Following this transaction, in January 2011, U.S. Bank succeeded BANA as trustee for the remaining 30 of the 35 Trusts at issue in this action. (*See* Decl. Ex. C; *see also* Exs. 2 and 3.)  Pursuant to the Purchase Agreement, BANA retained liability for its own conduct during the period when it or LaSalle acted as trustee for the 35 Trusts, and U.S. Bank agreed to be liable ***only*** for its own conduct after it became trustee. (*See* Sept. 23 Order 6; Decl. Ex. B §§ 1.1, 2.3.)

## II.   **ARGUMENT**

### A.   **The Court's September 23, 2013 Order Provides the Basis for the Dismissal of the Claims Against U.S. Bank with Respect to the 23 No-Plaintiff Trusts.**

This Motion for Partial Summary Judgment presents the ***exact*** same legal issue that this Court decided in its September 23, 2013 Order:  whether Plaintiffs can pursue claims for breach of contract and violation of the TIA against U.S. Bank with respect to Trusts in which they did not own certificates during the time that U.S. Bank was trustee.  This Court held that they cannot because U.S. Bank did not owe any obligation to them.

On September 23, 2013, the Court granted U.S. Bank's motion for partial summary judgment, holding that with respect to 16 of the 19 Trusts then at issue (the "Previous MSJ Trusts"), Plaintiffs had not raised a triable issue of fact as to the most basic element of their breach of contract claim—the existence of contractual obligations flowing from U.S. Bank to the named Plaintiffs. (*See* Sept. 23 Order 12.)  As the Court explained, because "U.S. Bank's

obligations were derived solely from its position as trustee," Plaintiffs who sold their certificates in the Trusts before U.S. Bank became trustee could not show that U.S. Bank owed them any obligation. (*Id.*)

The Court further decided that the "relevant contractual documents (the Instrument of Appointment and the Purchase Agreement)" pursuant to which U.S. Bank became trustee of the Trusts, "unambiguously leave any liability for any breaches of the predecessor trustee's obligations (if any) with that predecessor trustee." (*Id.*) The Court thus granted summary judgment for the breach of contract claim as to the Previous MSJ Trusts because Plaintiffs could not possibly have been damaged by the alleged breach of obligations that they were not owed. (*Id.* 12–13.) The Court further ruled that because Plaintiffs' claim of violations of the TIA was dependent on the alleged breaches of the PSAs, U.S. Bank also was entitled to summary judgment on Plaintiffs' claim for violations of the TIA with respect to the Previous MSJ Trusts. (*Id.* 13 n.5.)

Plaintiffs did not seek reconsideration of the Court's Order. However, they appear to have ignored it by including in the Consolidated Complaint the ***same*** Previous MSJ Trusts that the Court had already dismissed by summary judgment, despite the fact that no Plaintiff, including the newly-added Plaintiffs, held certificates in 13 of the 16 Previous MSJ Trusts during the time that U.S. Bank has been the trustee and are pursuing claims against U.S. Bank with respect to those Trusts. Plaintiffs also disregarded the Court's order by adding new Trusts in which: (i) Plaintiffs never held certificates while U.S. Bank has been the trustee or (ii) Plaintiffs held certificates but are not pursuing claims.[2] These new Trusts plus the thirteen of the Previous

---

[2] Although Plaintiffs Mississippi PERS, Arkansas PERS, and Iowa PERS held certificates in several of the 23 No-Plaintiff Trusts while U.S. Bank was trustee, they have expressly stated that they are no longer pursuing their claims with respect to some of those Trusts. (*See* Mem. of Law in Supp. of Mot. for Class Cert. Ex. A n.1; Ex. 2 nn.1–6; Consol. Compl. Ex. C, as amended.)

MSJ Trusts described in this paragraph constitute the 23 No-Plaintiff Trusts.

The undisputed facts on this motion are substantively the same as the undisputed facts supporting the September 23, 2013 Order and provide the grounds for the Court to dismiss Plaintiffs' breach of contract claim as to the 23 No-Plaintiff Trusts.[3]  It cannot be disputed that Plaintiffs sold their certificates in the 23 No-Plaintiff Trusts before U.S. Bank became trustee or are no longer pursuing claims with respect to those Trusts.  There is also no dispute that U.S. Bank became trustee for the 23 No-Plaintiff Trusts pursuant to the same agreements—the Instruments of Appointment and the Purchase Agreement—that this Court has already determined "unambiguously leave any liability for any breaches of the predecessor trustee's obligations (if any) with that predecessor trustee." (Sept. 23 Order 12; *see also* Decl. Ex. A ¶ 12, Ex. B §§ 1.1, 2.3.)  "In the absence of any binding obligations [owed by U.S. Bank to Plaintiffs], there can be no breach; and in the absence of a breach by [D]efendant [U.S. Bank], there can be no damage traceable to any action by [D]efendant U.S. Bank.  And without a breach by U.S. Bank or damages traceable to a breach by U.S. Bank with respect to the" 23 No-Plaintiff Trusts, dismissal of the claims brought in connection with the 23 No-Plaintiff Trusts "is entirely appropriate." (Sept. 23 Order 13.)

And, because Plaintiffs' claim for violation of the TIA is again dependent on their deficient claim for breach of contract (*see* Consol. Compl. ¶¶ 108–09), the TIA claim should be dismissed against U.S. Bank with respect to the 23 No-Plaintiff Trusts as well.  (*See* Sept. 23

---

[3] Attached hereto as <u>Exhibit 1</u> is a list of the 23 No-Plaintiff Trusts.  Attached hereto as <u>Exhibit 2</u> is a chart listing, with respect to each of the 23 No-Plaintiff Trusts, the last dates on which Plaintiffs contend they sold their certificates in the 23 No-Plaintiff Trusts, and the date on which U.S. Bank became trustee. (Consol. Compl. ¶ 1, Exs. A-J, as amended.)

Attached hereto as <u>Exhibit 3</u> is a chart listing the remaining 12 Trusts at issue in the case, the last dates on which Plaintiffs purportedly sold certificates in those Trusts, and the date on which U.S. Bank became trustee of those Trusts.  (*Id.* ¶ 1, Exs. A-J, as amended.)

Order 12 n.5.)

For these reasons, the Court should grant partial summary judgment dismissing Plaintiffs' claims against U.S. Bank with respect to the 23 No-Plaintiff Trusts.

**B.    Under this Court's December 7, 2012 Order, Plaintiffs Do Not Have Class Standing to Assert Claims Against U.S. Bank with Respect to the 23 No-Plaintiff Trusts.**

To establish standing to assert claims on behalf of a putative class, a named plaintiff must show "(1) that he 'personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant,' . . . and (2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (citations omitted).  Plaintiffs cannot satisfy the second prong in light of this Court's December 7, 2012 Order, which addressed precisely the same legal issue.  Plaintiffs cannot show that the supposed misconduct of U.S. Bank injured them in a way that implicates "the same set of concerns" as the conduct alleged to have injured other members of the putative class who *did* invest in the 23 No-Plaintiff Trusts while U.S. Bank was trustee.  *NECA*, 693 F.3d at 162.  As shown below, Plaintiffs already tried to make this argument and failed.[4]

**1.    The Court Already Held that Claims in this Case Relating to One Trust Do Not Raise the Same Set of Concerns as Claims Relating to Other Trusts.**

The original complaint filed in this case involved a single plaintiff—Policemen's Annuity and Benefit Fund of the City of Chicago ("PABF")—which had invested in only 5 trusts but

---

[4] Two of the ten named Plaintiffs in this case (PABF and Arkansas PERS) also cannot satisfy the first prong of the class standing test because they never held certificates of *any* of the 35 Trusts during the period when U.S. Bank was trustee, and therefore they cannot show that they suffered actual injury as a result of the putative misconduct of U.S. Bank for reasons explained *supra* at II.A.  However, in their Motion for Class Certification and their memorandum in support of that motion, those Plaintiffs indicate that they do not seek to be class representatives for the purposes of the U.S. Bank class.  (Mot. for Class Cert. 3 (ECF No. 163); Mem. of Law in Supp. of Mot. for Class Cert. 1 (ECF No. 165).)

sought to represent certificateholders that had invested in 41 trusts.  Defendants moved to

dismiss claims relating to some of the 41 trusts on the basis of class standing, arguing that PABF

lacked standing to sue on behalf of certificateholders in any trust in which it had not invested.  In

response, PABF argued that it had class standing to represent certificateholders of all 41 trusts

because "Plaintiff and class members purchased MBS from substantially similar WaMu Trusts,

that had substantially similar PSAs and had Defendants serving as Trustee." (Mem. of Law in

Opp'n to Mot. to Dismiss 12 (ECF No. 30).)  PABF also relied on its allegation that "Defendants

owed the same obligations to MBS purchasers in all of the Covered Trusts, that they breached

those obligations through a common course of misconduct, and thereby caused a similar injury to

all class members." (*Id.*)

   After oral argument on Defendants' motion to dismiss, but before the Court adjudicated

the motion, the Second Circuit addressed the issue of class standing in *NECA-IBEW Health &*
*Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012).  Thereafter, PABF filed

with this Court a nine-page Notice of New Authority (along with an affidavit and six exhibits

attaching nearly 200 pages), dedicated solely to explaining why PABF believed that the *NECA*

decision supported its argument that PABF had class standing to represent certificateholders in

all 41 trusts, even though PABF only had invested in 5 of those trusts.  Specifically, PABF

argued that:

- all 41 trusts then at issue contained "at least some loans issued by WaMu;" and

- "proof of class members' injuries in this case will center on whether the originators complied with their underwriting guidelines in originating the loans underlying the Trusts, as well as whether Defendants complied with their obligations to put back defective loans."

(Notice of New Authority 8 (ECF No. 42).)

   After considering the arguments raised in the Plaintiffs' two memoranda and at oral

argument, the Court rejected PABF's argument.  The Court held that PABF "only has class standing as to the five trusts in which it purchased certificates" and dismissed Plaintiffs' claims with respect to 36 of the 41 trusts.  (Dec. 7 Order 15.)  In reaching that decision, this Court recognized that:

- "[e]ach Trust is backed by a group of mortgage loans and critically, the set of loans underlying each Trust is unique—i.e., each loan is only 'in' (or 'backs the MBS of') one Trust;"

- "[t]he value of a particular certificate is tied to the mortgage loans underlying the trust that issue that certificate;" and

- "to the extent that the Trustee breached its duties, and such breach can be found to have caused a diminution in the value of a trust's MBS, there is no indication that the alleged breach would 'infect' the value of MBS from any other Trust and vice versa."

(*Id.* 15–16.)  Taking all of this together, the Court reasoned that:

> [t]he Complaint's allegations (e.g., what was 'actually known' about the quality of the loans in each trust, whether an Event of Default occurred, etc.) examined against the unique composition of each trust demonstrates that the 'concerns' would be varied—not the 'same.'  Holders of MBS in one of the thirty-six trusts in which plaintiff did not purchase MBS cannot be said to have the 'same set of concerns' as holders of MBS in one of the five Trusts plaintiff did.

(*Id.* 17.)

In short, the Court rejected PABF's theory of class standing because the "structure of the Trusts" creates a situation in which "a breach of the Trustee's duties with respect to one Trust does not necessarily implicate the same 'set of concerns'" as an alleged breach of the Trustee's duties with respect to another Trust.  (*Id.* 15.)

PABF did not move for reconsideration of the Court's December 7, 2012 Order and did not seek leave to file an interlocutory appeal.

### 2. Plaintiffs Lack Class Standing to Represent Certificateholders of the 23 No-Plaintiff Trusts Based on the Court's December 7, 2012 Order.

Notwithstanding the plain language of this Court's December 7, 2012 Order, Plaintiffs

claim that they have standing to represent certificateholders of all 35 Trusts in the Consolidated Complaint with respect to their claims against U.S. Bank, despite the fact that Plaintiffs never held certificates in the 23 No-Plaintiff Trusts during the relevant period.[5]  In this motion, U.S. Bank asks the Court to apply its analysis of the ***identical legal question*** to the 35 Trusts currently in this case.  The only factual difference between the issue raised in Defendants' motion to dismiss the original complaint in this action and this motion is that, instead of a single plaintiff (*i.e.*, PABF) seeking class standing with respect to certificates of 36 trusts that they did not hold, this motion involves multiple Plaintiffs seeking to represent certificateholders with respect to certificates of 23 Trusts that they did not hold.

All of the factors that the Court previously considered when it rejected PABF's claim of class standing and dismissed 36 trusts from this case in December 2012 apply with equal force to the 23 No-Plaintiff Trusts.  Each of the Trusts in this case is backed by a unique set of loans, and the value of the certificates in each of those Trusts is determined by the value of those loans.

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████████████████████████  Moreover, "to the extent
that the Trustee breached its duties, and such breach can be found to have caused a diminution in the value of a trust's MBS, there is no indication that the alleged breach would 'infect' the value of MBS from any other Trust and vice versa." (Dec. 7 Order 16.)  For these reasons, U.S. Bank's actions or omissions with respect to the unique set of loans backing a particular Trust do not implicate the same set of concerns as the trustee's actions or omissions with respect to a

---

[5] In their Motion for Class Certification, Plaintiffs seek to certify a class to pursue claims against U.S. Bank relating to the periods when U.S. Bank acted as trustee for the 35 Trusts.  For 5 Trusts, that period began on February 9, 2009.  For the remaining 30 Trusts, that period began on January 20, 2011.

different Trust backed by an entirely different set of loans.  (Dec. 7 Order 15–17 ("The

Complaint's allegations (*e.g.*, what was 'actually known' about the quality of the loans in each

trust, whether an Event of Default occurred, etc.) examined against the unique composition of

each trust demonstrates that the 'concerns' would be varied—not the 'same.'").)[6]

In support of their Motion for Class Certification, Plaintiffs preview the "support" for

their class standing position, arguing in conclusory fashion that the alleged conduct of U.S. Bank

"infects" or "applies to each" of the Trusts because they have alleged the same type of

misconduct with respect to each of the Trusts, thereby permitting class standing.  (*See* Mem. of

Law in Supp. of Mot. Class Cert. 18-19.)  However, this is exactly the argument that PABF

raised—and the Court rejected—more than one year ago.

In summary, under *NECA* and this Court's December 7, 2012 Order, Plaintiffs do not

have class standing to assert claims against U.S. Bank with respect to the 23 No-Plaintiff Trusts.

Pursuant to the Court's December 7, 2012 Order, U.S. Bank's alleged conduct with respect to the

23 No-Plaintiff Trusts does not implicate the same set of concerns as U.S. Bank's alleged

conduct with respect to Trusts in which Plaintiffs did hold certificates while U.S. Bank was

trustee.  Accordingly, the Court should grant partial summary judgment dismissing any putative

class claims against U.S. Bank concerning the 23 No-Plaintiff Trusts for the reasons set forth

above.

## III.   CONCLUSION

For all of the foregoing reasons, Defendant U.S. Bank respectfully requests that the Court

dismiss Plaintiffs' claims against it with respect to the 23 No-Plaintiff Trusts as well as holding

---

[6] At least some of the Plaintiffs apparently agree.  In a letter to this Court dated September 18, 2013, they conceded that "trust-specific facts [] will comprise the core" of the case and acknowledged this Court's recognition that the trustees' knowledge and actions or omissions with respect to different Trusts, which have unique loan compositions, raise different sets of concerns.  (Sept. 18, 2013 Letter from Andrew Zivitz of Kessler Topaz Meltzer & Check LLP to the Court at 2, Decl. Ex. D.)

that Plaintiffs lack class standing to assert claims against U.S. Bank with respect to the 23 No-

Plaintiff Trusts.

Dated: New York, New York

     March 10, 2014

MORGAN, LEWIS & BOCKIUS LLP


By: _____

    Michael S. Kraut (MK-4469)
    mkraut@morganlewis.com
    Kevin T. Rover (KR-5629)
    krover@morganlewis.com
    John M. Vassos (JV-3504)
    jvassos@morganlewis.com
    101 Park Avenue
    New York, NY  10178-0060
    212.309.6000
    212.309.6001

*Attorneys for Defendant*
*U.S. Bank National Association*

## **EXHIBIT 1**

The following are the 23 No-Plaintiff Trusts where the named Plaintiffs sold their certificates before U.S. Bank became trustee and/or where the named Plaintiffs have stated that they are no longer pursuing their claims:

1.  WaMu Mortgage Pass-Through Certificates Series 2006-AR6,
2.  WaMu Mortgage Pass-Through Certificates Series 2006-AR8,
3.  WaMu Mortgage Pass-Through Certificates Series 2006-AR10,
4.  WaMu Mortgage Pass-Through Certificates Series 2006-AR11,
5.  WaMu Mortgage Pass-Through Certificates Series 2006-AR12,
6.  WaMu Mortgage Pass-Through Certificates Series 2006-AR13,
7.  WaMu Mortgage Pass-Through Certificates Series 2006-AR14,
8.  WaMu Mortgage Pass-Through Certificates Series 2006-AR17,
9.  WaMu Mortgage Pass-Through Certificates Series 2006-AR18,
10. WaMu Mortgage Pass-Through Certificates Series 2006-AR19,
11. WaMu Mortgage Pass-Through Certificates Series 2007-HY1,
12. WaMu Mortgage Pass-Through Certificates Series 2007-HY4,
13. WaMu Mortgage Pass-Through Certificates Series 2007-HY6,
14. WaMu Mortgage Pass-Through Certificates Series 2007-HY7,
15. WaMu Mortgage Pass-Through Certificates Series 2007-OA3,
16. WaMu Mortgage Pass-Through Certificates Series 2007-OA5,
17. WaMu Mortgage Pass-Through Certificates WMALT Series 2005-9,
18. WaMu Mortgage Pass-Through Certificates WMALT Series 2006-2,
19. WaMu Mortgage Pass-Through Certificates WMALT Series 2006-5,
20. WaMu Mortgage Pass-Through Certificates WMALT Series 2006-AR2,
21. WaMu Mortgage Pass-Through Certificates WMALT Series 2006-AR3,
22. WaMu Mortgage Pass-Through Certificates WMALT Series 2006-AR6, and
23. WaMu Mortgage Pass-Through Certificates WMALT Series 2007-HY2.

(Rule 56.1 Statement of Undisputed Facts ¶¶ 10-32.)

**EXHIBIT 2**

**The 23 No-Plaintiff Trusts Where**
**the Named Plaintiffs Sold Their Certificates Before U.S. Bank Became Trustee and/or**
**Where the Named Plaintiffs Have Stated That They Are No Longer Pursuing Their Claims**

| RMBS Trust | Date of Plaintiffs' Last Sale | Date on Which U.S. Bank Became Trustee |
|---|---|---|
| WaMu Mortgage Pass-Through Certificates Series 2006-AR6 | 05/05/2009[1] | 1/20/2011 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR8 | 06/16/2010 | 1/20/2011 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR10 | 06/15/2010[2] | 1/20/2011 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR11 | 02/05/2010 | 1/20/2011 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR12 | 07/09/2009 | 1/20/2011 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR13 | 08/18/2009 | 1/20/2011 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR14 | 04/01/2010[3] | 1/20/2011 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR17 | [4] | 1/20/2011 |

---

[1] In Exhibit C to the Notice of Filing: Amended Exhibit C, Amended Exhibit D and Amended Exhibit H to the Consolidated Third Amended Class Action Complaint, Plaintiff Iowa Public Employees' Retirement System deleted its transactions in WaMu Mortgage Pass-Through Certificates Series 2006-AR6. Thus, the latest sale date for the other Plaintiff that invested in this Trust is listed.

[2] In Exhibit A to their Memorandum of Law in Support of their Motion for Class Certification, Plaintiff Mississippi PERS states that it "is no longer bringing claims related to its investments" in WaMu Mortgage Pass-Through Certificates Series 2006-AR10, WaMu Mortgage Pass-Through Certificates Series 2006-AR17, WaMu Mortgage Pass-Through Certificates Series 2006-AR18, WaMu Mortgage Pass-Through Certificates Series 2006-AR19, WaMu Mortgage Pass-Through Certificates Series 2007-HY1, and WaMu Mortgage Pass-Through Certificates Series 2007-HY3. (Mem. of Law in Supp. of Mot. for Class Cert. Ex. A n.1.) (Footnote 1 of Exhibit A to Plaintiffs' Memorandum of Law in Support of their Motion for Class Certification incorrectly identifies WaMu 2006-AR19 as "WaMu 2009-AR19." Based on a review of Mississippi PERS's original exhibit to the Consolidated Third Amended Class Action Complaint, "WaMu 2009-AR19", which was never at issue in the case, appears to be WaMu 2006-AR19.) Thus, although Mississippi PERS continues to hold certificates in these Trusts, the latest sale date for the other Plaintiffs, if any, is listed.

[3] In Exhibit A to their Memorandum of Law in Support of their Motion for Class Certification, Plaintiff APERS states that it "is no longer bringing claims for its investments" in WaMu Mortgage Pass-Through Certificates Series 2006-AR14. (Mem. of Law in Supp. of Mot. for Class Cert. Ex. A n.1.) Thus, the latest sale date for the other Plaintiff that invested in this Trust is listed.

| | | |
|---|---|---|
| WaMu Mortgage Pass-Through Certificates Series 2006-AR18 | 04/24/2009[5] | 1/20/2011 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR19 | 05/27/2010[6] | 1/20/2011 |
| WaMu Mortgage Pass-Through Certificates Series 2007-HY1 | 10/12/2010[7] | 1/20/2011 |
| WaMu Mortgage Pass-Through Certificates Series 2007-HY4 | 11/06/2008 | 1/20/2011 |
| WaMu Mortgage Pass-Through Certificates Series 2007-HY6 | 12/01/2009 | 1/20/2011 |
| WaMu Mortgage Pass-Through Certificates Series 2007-HY7 | 07/22/2008 | 1/20/2011 |
| WaMu Mortgage Pass-Through Certificates Series 2007-OA3 | 08/18/2009 | 1/20/2011 |
| WaMu Mortgage Pass-Through Certificates Series 2007-OA5 | 01/08/2010 | 1/20/2011 |
| WaMu Mortgage Pass-Through Certificates, WMALT Series 2005-9 | 03/12/2009 | 1/20/2011 |
| WaMu Mortgage Pass-Through Certificates, WMALT Series 2006-2 | 04/01/2008 | 1/20/2011 |
| WaMu Mortgage Pass-Through Certificates, WMALT Series 2006-5 | 04/01/2008 | 2/9/2009 |
| WaMu Mortgage Pass-Through Certificates, WMALT Series 2006-AR2 | 10/07/2010 | 1/20/2011 |
| WaMu Mortgage Pass-Through Certificates, WMALT Series 2006-AR3 | 07/01/2010 | 1/20/2011 |
| WaMu Mortgage Pass-Through Certificates, WMALT Series 2006-AR6 | 10/15/2010 | 1/20/2011 |
| WaMu Mortgage Pass-Through Certificates, WMALT Series 2007-HY2 | 07/10/2008 | 1/20/2011 |

---

[4] *See supra* n.2.  Plaintiff Mississippi PERS is the only Plaintiff in this case that claims to have held certificates in WaMu Mortgage Pass-Through Certificates Series 2006-AR17.  Because it is not pursuing its claims in that Trust, no sale date is listed.

[5] *See supra* n.2.

[6] *See supra* n.2.

[7] *See supra* n.2.

**EXHIBIT 3**

**The 12 Remaining Trusts of the 35 Trusts**

| RMBS Trust | Date on Which U.S. Bank Became Trustee | Date of Plaintiffs' Last Sale |
|---|---|---|
| WaMu Mortgage Pass-Through Certificates, WMALT Series 2006-AR1 | 2/9/2009 | 03/19/2010 |
| WaMu Mortgage Pass-Through Certificates, WMALT Series 2006-AR5 | 2/9/2009 | 10/18/2010 |
| WaMu Mortgage Pass-Through Certificates, WMALT Series 2006-AR9 | 2/9/2009 | Still Holds |
| WaMu Mortgage Pass-Through Certificates, WMALT Series 2007-OA3 | 2/9/2009 | 10/03/2012 |
| WaMu Mortgage Pass-Through Certificates Series 2005-AR15 | 1/20/2011 | 02/23/2011 |
| WaMu Mortgage Pass-Through Certificates Series 2005-AR17 | 1/20/2011 | 03/24/2011 |
| WaMu Mortgage Pass-Through Certificates Series 2005-AR19 | 1/20/2011 | 03/24/2011 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR9 | 1/20/2011 | Still Holds |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR16 | 1/20/2011 | Still Holds |
| WaMu Mortgage Pass-Through Certificates Series 2007-HY2 | 1/20/2011 | Still Holds |
| WaMu Mortgage Pass-Through Certificates Series 2007-HY3 | 1/20/2011 | Still Holds |
| WaMu Mortgage Pass-Through Certificates Series 2007-OA4 | 1/20/2011 | 02/22/2012 |