# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

POLICEMEN'S ANNUITY AND
BENEFIT FUND OF THE CITY OF
CHICAGO, LABORERS' PENSION FUND
AND HEALTH AND WELFARE
DEPARTMENT OF THE
CONSTRUCTION AND GENERAL
LABORERS' DISTRICT COUNCIL OF
CHICAGO AND VICINITY, IOWA
PUBLIC EMPLOYEES' RETIREMENT
SYSTEM, ARKANSAS PUBLIC
EMPLOYEES' RETIREMENT SYSTEM,
VERMONT PENSION INVESTMENT
COMMITTEE, WASHINGTON STATE
INVESTMENT BOARD, ARKANSAS
TEACHER RETIREMENT SYSTEM,
MISSISSIPPI PUBLIC EMPLOYEES'
RETIREMENT SYSTEM , CITY OF
TALLAHASSEE RETIREMENT SYSTEM,
and CENTRAL STATES, SOUTHEAST
AND SOUTHWEST
AREAS PENSION FUND,

Civil Action No. 1:12-CV-02865-KBF

**Honorable Katherine B. Forrest**

Plaintiffs,

- against-

BANK OF AMERICA, NA (as Trustee
Under Various Pooling and Servicing
Agreements), and U.S. BANK NATIONAL
ASSOCIATION (as Trustee Under Various
Pooling and Servicing Agreements),

Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
FOR (I) PRELIMINARY APPROVAL OF THE SETTLEMENT, (II) CERTIFICATION
OF THE CLASS FOR PURPOSES OF SETTLEMENT, (III) APPROVAL OF NOTICE
TO THE SETTLEMENT CLASS AND (IV) SCHEDULING OF FINAL SETTLEMENT
APPROVAL HEARING**

1937245.1

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... 1

II.     SUMMARY OF THE ACTION ..................................................................... 3

III.    SETTLEMENT NEGOTIATIONS ................................................................ 3

IV.     SUMMARY OF THE PROPOSED SETTLEMENT ...................................... 4

V.      THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........... 5

        A.      The Settlement is the Result of Good Faith, Arm's-Length Negotiations By
                Well-Informed and Experienced Counsel ................................................ 7

        B.      The Stage of the Proceedings When the Parties Reached the Proposed
                Settlement, and the Substantial Benefits for the Settlement Class Provided
                by the Proposed Settlement, Weighed Against Litigation Risks, Strongly
                Support Preliminary Approval ............................................................... 8

VI.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
        SETTLEMENT PURPOSES PURSUANT TO RULE 23 ............................... 11

        A.      The Settlement Class Satisfies the Requirements of Rule 23(a) .......... 12

                1.      Numerosity ........................................................................ 12

                2.      Commonality ...................................................................... 12

                3.      Typicality ........................................................................... 13

                4.      Adequate Representation ................................................... 13

        B.      The Settlement Class Representatives' Claims Satisfy the Prerequisites of
                Rule 23(b)(3) ....................................................................................... 14

                1.      Common Legal and Factual Questions Predominate ............ 14

                2.      A Class Action is Superior to Other Methods of Adjudication ............... 15

VII.    THE FORM AND MANNER OF NOTICE TO THE SETTLEMENT CLASS
        SHOULD BE APPROVED .......................................................................... 15

VIII.   PROPOSED SCHEDULE OF EVENTS ....................................................... 18

IX.     CONCLUSION ............................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)..................................................................4

*In re Am. Int'l Grp. Inc. Sec. Litig.*,
  689 F.3d 229 (2d Cir. 2012)............................................................................11

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................................11, 15

*In re AOL Time Warner, Inc. Sec. Litig.*,
  No. MDL 1500, 02 Civ. 5575, 2006 WL 903236 (S.D.N.Y. April 6, 2006)..........................8

*Aramburu v. Healthcare Fin. Servs.*,
  No. 02 CV 6535 (ARR), 2005 WL 990995 (E.D.N.Y. Apr. 14, 2005)...............................11

*BlackRock Allocation Target Shares: Series S Portfolio et al. v. U.S. Bank National
  Association*,
  Index No. 651864/2014 (N.Y. Sup. Ct., N.Y. Cnty) ...............................................5

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)............................................................................12

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)..............................................................................7

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)............................................................................11

*Detroit v. Grinnell Corp.*,
  495 F. 2d 448 (2d Cir. 1974)............................................................................7

*Deutsche Bank Nat'l Trust Co. v. Fed. Deposit Ins. Corp., et al.*,
  09-cv-1656-RMC (D.D.C.)................................................................................10

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
  No. 02-CV-3400, 2010 WL 4537550 (S.D.N.Y. Nov 8, 2010)......................................7, 8

*In re Flag Telecomm. Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)..........................................................................13, 14

*In re Giant Interactive Corp., Inc. Sec. Litig.*,
  No. 07 Civ. 10588, 2011 WL 5244707 (S.D.N.Y. Nov. 2, 2011) ...................................8

1937245.1

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................7, 8, 18

*In re Initial Pub. Offering Sec. Litig.*,
  226 F.R.D. 186 (S.D.N.Y. 2005) .................................................................................6

*In re Initial Pub. Offering Sec. Litig.*,
  243 F.R.D. 79 (S.D.N.Y. 2007) ...............................................................................6, 7

*Lapin v. Goldman Sachs & Co.*,
  254 F.R.D. 168 (S.D.N.Y. 2008) ..............................................................................15

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
  No. 08 Civ .....................................................................................................................13

*In re NASDAQ Market-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ...................................................................................6

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ...........................................................................6, 11

*Pub. Emps. Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*
  280 F.R.D. 130 (S.D.N.Y 2012) ................................................................................14

*Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago v. The
  Bank of New York Mellon*,
  2013 U.S. Dist. LEXIS 20214 (S.D.N.Y. Feb. 14, 2013) ..........................................9

*Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago v. The
  Bank of New York Mellon*,
  914 F. Supp. 2d 422 (S.D.N.Y. 2012) ........................................................................9

*Teachers' Ret. Sys. of La. v. ACLN Ltd.*,
  No. 01 Civ. 11814 (LAP), 2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) ...............13

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) .........................................................................8

*Tsereteli v. Residential Asset Securitization Trust*,
  2006-A8, 283 F.R.D. 199 (S.D.N.Y. 2012) ..............................................................13

*UFCW Local 1776 v. Eli Lilly & Co.*,
  620 F.3d 121 (2d Cir. 2010) ......................................................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ...............................................................................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)..........................................................................6, 7, 17

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)...........................18

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)..........................................................................18

## STATUTES

Trust Indenture Act of 1939, 15 U.S.C. §§77aaa, et seq. ..............................................................3

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 ............................................................................................ *passim*

Plaintiffs Policemen's Annuity and Benefit Fund of the City of Chicago ("PABF"), Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity ("Chicago Laborers"), Iowa Public Employees' Retirement System ("IPERS"), Arkansas Public Employees' Retirement System ("APERS"), Arkansas Teacher Retirement System ("ATRS"), Mississippi Public Employees' Retirement System ("MPERS"), City of Tallahassee Retirement System ("CTRS"), Vermont Pension Investment Committee ("VPIC"), Washington State Investment Board ("WSIB") and Central States, Southeast and Southwest Areas Pension Fund ("Central States") (collectively "Plaintiffs") respectfully submit this memorandum of law in support of their unopposed motion for: (i) preliminary approval of the proposed settlement between Plaintiffs and Defendants[1] embodied in the Stipulation of Settlement dated November 7, 2014 (the "Stipulation")[2]; (ii) certification of the proposed Settlement Class stipulated to by the Parties for purposes of the Settlement; (iii) approval of the form and manner of distribution of the Notice to the proposed Settlement Class; and (iv) the scheduling of a hearing (the "Final Approval Hearing") to consider, among other things, final approval of the Settlement, and Plaintiffs' Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, as defined in the Stipulation.

## I.    INTRODUCTION

After two and a half years of litigation, in one of the first class actions of its kind, the Parties have reached an agreement to settle the above-captioned class action litigation brought against the former and current trustee of various residential mortgage-backed securities ("RMBS") trusts containing loans originated or acquired by Washington Mutual Bank and/or its affiliates

---

[1] Defendants are Bank of America, N.A. ("BANA") and U.S. Bank National Association ("USB").

[2] Unless otherwise defined herein, all capitalized terms used herein shall have the meanings provided in the Stipulation. A copy of the Stipulation is attached as Exhibit 1 to the accompanying Declaration of Deborah Clark-Weintraub in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement ("Weintraub Declaration").

(collectively, "WaMu"), pursuant to the terms set forth in the accompanying Stipulation.   The proposed Settlement provides for a cash payment of $69 million U.S. dollars in exchange for the dismissal of the Subject Claims, as defined in the Stipulation, ¶ 30.  The Settlement is the product of complex and hard-fought litigation, followed by four months of intensive arm's-length settlement negotiations, requiring substantial assistance from a private mediator, Robert A. Meyer, who has extensive complex mediation experience.   Plaintiffs respectfully submit that the Settlement, which is the first of its kind in a class action challenging the conduct of an RMBS trustee, provides an immediate and favorable resolution for the Settlement Class.

By the time the Settlement was reached, this Action had been thoroughly litigated, and the Plaintiffs were fully informed about the strengths and weakness of the case.  Indeed, the Settlement was possible only after Plaintiffs:  (1) briefed and argued two motions to dismiss, (2) briefed and argued class certification, (3) briefed and argued two partial summary judgment motions, (4) conducted and nearly completed fact discovery, which included: reviewing/producing more than 3 million pages of documents and taking/defending a total of 33 party and non-party depositions, and (5) prepared expert reports in support of class certification, including a report from an expert on loan sampling methodology and an expert on damages methodology.

Plaintiffs, who are all sophisticated institutional investors, and their Counsel – based upon their extensive evaluation of the legal and factual basis for their claims and their recognition of the risk and expense of continued litigation surrounding these novel claims – submit that the proposed Settlement is fair, reasonable and adequate and is in the best interests of the Settlement Class.  For the reasons set forth herein, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the Proposed Order Preliminarily Approving Settlement and

Providing for Notice ("Preliminary Approval Order") so that notice may be provided to the Settlement Class.  *See* Preliminary Approval Order, Exhibit 2 to the Weintraub Declaration.

## II.    SUMMARY OF THE ACTION

Filed in April 2012, this class action alleged that Defendants, as Trustees for various WaMu RMBS Trusts (the "Covered Trusts"), breached their contractual responsibilities and violated the federal Trust Indenture Act of 1939, as amended (the "TIA"), 15 U.S.C. §§77aaa, *et seq.*, by failing to cause the substitution or repurchase of Mortgage Loans that breached the Seller's representations and warranties.  Plaintiffs alleged that Defendants' breaches of their contractual and statutory duties caused losses to the Covered Trusts and, as a result, to investors who purchased certificates issued by those Trusts ("Certificates").

Throughout much of the past two years, in addition to extensive motion practice, including the briefing of two motions to dismiss, two partial summary judgment motions, and a class certification motion, the Parties engaged in substantial discovery on an aggressive schedule. Counsel subpoenaed more than 60 parties and non-parties for documents and depositions, reviewed over 3 million pages of documents, and gathered and prepared for review by their experts thousands of loan files.  Counsel also took or defended a total of 33 party and non-party depositions and retained and consulted re-underwriting, statistical and damages experts prior to engaging in settlement talks. These efforts informed the Parties' decision to enter into the proposed Settlement.

## III.    SETTLEMENT NEGOTIATIONS

As discovery neared its end, the Parties retained Robert A. Meyer, a well-respected mediator, to assist them in determining whether a resolution of the Action was possible.  The Parties participated in a full-day mediation on May 30, 2014.  In anticipation of the mediation, each side prepared detailed mediation statements for Mr. Meyer's review.  After the initial full-day

meeting, due to the complexity of the issues, months of additional negotiations followed, with the continued assistance of the mediator, regarding the terms of the Stipulation, which was executed on November 7, 2014.

## IV.    SUMMARY OF THE PROPOSED SETTLEMENT

As set forth in the Stipulation, BANA, on behalf of both Defendants, has agreed to deposit or cause to be deposited $69 million in cash to resolve the Action.  Plaintiffs' principal reason for entering into the Settlement is the substantial and immediate cash benefit provided for the Settlement Class considered against the significant risk that a smaller recovery – or, indeed, no recovery – might be achieved after continued litigation and a trial of the Action, a process that could last many months, or even years with appeals.

In connection with this Settlement, Plaintiffs have engaged a qualified expert, Dr. Brad Cornell, to assist in the creation of a fair and reasonable plan of allocation that will equitably distribute the Settlement proceeds to Settlement Class Members who have suffered an economic loss as a proximate result of Defendants' alleged wrongdoing.  Distributions to eligible  Settlement Class members will be based on their out-of-pocket losses attributable to defective Mortgage Loans[3] or losses attributable to the decline in the value of the Certificates. The Plan of Allocation also reduces certain Certificates' recovery based on the Court's rulings at the motion to dismiss stage.[4]  The Plan of Allocation will be explained fully in the Notice mailed to the Settlement Class and available on the settlement website at www.WaMuTIASettlement.com and Defendant USB's

---

[3] An out-of-pocket loss shall mean a monetary loss on an investment in a Certificate as determined pursuant to the following formula: (purchase price × quantity purchased), minus principal received, minus (current/sale price × current/sale position).  *See* Stipulation at ¶ 18.

[4] To account for the reduced likelihood of success of the claims of certain Certificates, the proposed Plan of Allocation discounts the value of those claims by 90% for purposes of allocating the Net Settlement Fund among eligible Settlement Class members.  *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429 (S.D.N.Y. 2001) ("Allocation formulas, including certain discounts for certain securities, are recognized as an appropriate means to reflect the comparative strengths and values of different categories of the claim.").

trust investor website.  Plaintiffs will seek the Court's approval of the Plan of Allocation in conjunction with its motion for Final Approval of the Settlement.

## V.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement so that notice of its terms can be provided to the Settlement Class, defined as follows:

> Plaintiffs and every other person and entity that purchased or otherwise acquired any of the Certificates at any time (including but not limited to any beneficial owners), and that (i) sold or otherwise disposed of the Certificates as of November 7, 2014, or (ii) did not sell or otherwise dispose of the Certificates as of November 7, 2014, but suffered an Out-Of-Pocket Loss on an investment in a Certificate as of such date.

The term "Settlement Class" does not include (a) Defendants, JPMorgan Chase & Co., Washington Mutual Bank, and their respective parents, subsidiaries, and affiliates other than Investment Vehicles; (b) the FDIC as a potential successor to Washington Mutual Bank; (c) the named plaintiffs in the derivative action entitled *BlackRock Allocation Target Shares: Series S Portfolio, et al. v. U.S. Bank National Association*, Index No. 651864/2014 (N.Y. Sup. Ct., N.Y. Cnty.); and (d) any person or entity that submits a valid and timely request for exclusion from the Settlement Class in accordance with the requirements set forth in the Notice.  *See* Stipulation ¶ 28. The Plaintiffs in the *Blackrock Litigation* have sued USB, as Trustee of 841 RMBS Trusts, for ignoring systemic defects in the Trusts and servicing of those Trusts.  *Blackrock Litigation* Complaint, ¶ 1.  The Covered Trusts at issue in this Action are among the 841 Trusts being sued on in the *Blackrock Litigation.*  Accordingly, Plaintiffs have excluded the named plaintiffs in the *Blackrock Litigation*.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of class claims.  Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class may be settled . . . only with the court's approval.").  "Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a 'fairness hearing.'  First, the

court reviews the proposed terms of settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005). *See also* Manual for Complex Litigation, Fourth, § 21.632, at 320 (Fed. Judicial Ctr. 2004). As explained by Judge Sweet:

> In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice. Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted. Once preliminary approval is bestowed, the second step of the process ensues. . . .

*In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citations omitted)[5]; *see also In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

Thus, the Court's obligation at this stage of the proceedings is to determine whether the settlement is "'at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard.'" *In re NASDAQ*, 176 F.R.D. at 102; *See also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (Pollack, M.) ("The Court's function now is 'to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.'").

The settlement of complex class action litigation is also favored by public policy and strongly encouraged by the courts. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.' 'The compromise of complex litigation is encouraged by the courts and favored by public policy.'"); *In re Prudential*, 163 F.R.D. at 209 ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is

---

[5] Unless otherwise noted, internal citations are omitted.

particularly true in class actions.").

As summarized below, and as will be detailed further in a subsequent motion for final approval of the Settlement, a preview of the factors considered by courts in granting final approval of class action settlements demonstrates that the Settlement is well "within the range of possible approval," and that preliminary approval should be granted.[6]  *In re Initial Pub. Offering*, 243 F.R.D. at 87.

### A.      The Settlement is the Result of Good Faith, Arm's-Length Negotiations By Well-Informed and Experienced Counsel

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between well-informed counsel. *See Wal-Mart*, 396 F.3d at 116 (noting strong "presumption of fairness" where settlement is product of arm's-length negotiations conducted by experienced, capable counsel after meaningful discovery); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400, 2010 WL 4537550, at *13 (S.D.N.Y. Nov. 8, 2010) (same).  Here, after two and a half years of litigation, the Settlement was negotiated at arm's-length by counsel well informed of the issues, and who possess extensive experience in complex litigation.  Moreover, the Settlement was achieved under the auspices of Robert A. Meyer of Loeb & Loeb LLP, one of the most respected mediators in the country.  The use of a mediator in settlement negotiations further supports the presumption of fairness and the conclusion that the Settlement achieved here was free of collusion.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85

---

[6] In connection with the second stage of the approval process - final approval, the Court will be asked to assess the following factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F. 2d 448, 463 (2d Cir. 1974) as they relate to the proposed Settlement: "(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'"  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

(2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) (the use of an experienced mediator "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion.").[7]

The Settlement was also negotiated at the direction of, and approved by, the Plaintiffs and proposed Settlement Class Representatives in this Action – all of which are sophisticated institutional investors. *See Global Crossing*, 225 F.R.D. at 462 (participation of sophisticated institutional investor Lead Plaintiffs in settlement process supports approval of settlement).

Consequently, the Court has ample evidence that the Settlement was negotiated in good faith by well-informed counsel, and was not the product of collusion.

### B. The Stage of the Proceedings When the Parties Reached the Proposed Settlement, and the Substantial Benefits for the Settlement Class Provided by the Proposed Settlement, Weighed Against Litigation Risks, Strongly Support Preliminary Approval

The proposed Settlement creates a settlement fund of $69 million in cash. This recovery provides a substantial benefit to the Settlement Class, especially in light of the risks posed by continued litigation of Plaintiffs' novel claims. The benefit of the proposed Settlement must be compared to the risk that no recovery or a lesser recovery might be achieved after continued litigation, or trial.

As will be set forth in further detail prior to the Final Approval Hearing and as summarized herein, Plaintiffs' decision to enter into the Settlement was based on their thorough understanding of the strengths and weaknesses of their claims against Defendants after nearly two and a half

---

[7] *See Flag Telecom*, 2010 WL 4537550, at *14 ("The presumption in favor of the negotiated settlement in this case is strengthened by the fact that settlement was reached in an extended mediation."); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (parties were entitled to a presumption of fairness where mediator facilitated arm's-length negotiations); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 02 Civ. 5575, 2006 WL 903236, at *7 (S.D.N.Y. Apr. 6, 2006) (noting that involvement of mediator in settlement negotiations helped "'ensure that the proceedings were free of collusion and undue pressure'").

years of intensive litigation.  At the time the Parties began their settlement negotiations, fact discovery was coming to a close.

Additionally, Plaintiffs' motion for class certification and Defendants' *Daubert* motion to exclude the opinions contained in one of Plaintiffs' expert reports submitted in support of class certification, were *sub judice*.  Although Plaintiffs and their Counsel believe that the claims asserted in the Action are meritorious and that the Court would have ultimately certified the proposed class and rejected the *Daubert* motion, continued litigation against Defendants posed significant risks that made any recovery for the Settlement Class uncertain.

Here, the claims alleged by Plaintiffs involve novel and complex legal and factual issues. From the outset, Plaintiffs appreciated the risks inherent in litigating their claims.  There is little established precedent for litigation under the federal Trust Indenture Act, much less, such litigation on a class-wide basis.  At the time this case was commenced, only a single court had sustained claims under the theories asserted here for purchasers of RMBS, *Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago v. The Bank of New York Mellon*, 914 F. Supp. 2d 422 (S.D.N.Y. 2012), and that decision was certified for interlocutory appeal to the Second Circuit, *Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago v. The Bank of New York Mellon*, No. 11 Civ. 5459, 2013 WL 593766 (S.D.N.Y. Feb. 14, 2013), which appeal is still pending. Nor had any court certified an MBS class alleging these contractual and statutory claims or accepted plaintiffs' damages theories arising from such claims. Moreover, in addition to this dearth of established precedent to support their claims, if the Action continued, Plaintiffs would have had to overcome numerous affirmative defenses, such as: whether they could show the Trustees had "actual knowledge" of breaches of the representations and warranties in the Covered Trusts and whether, even if the Trustees had acted, investors'

injuries could have been redressed given WaMu's seizure by the FDIC and JPMorgan Chase's adamant contention that it had not assumed repurchase liabilities with respect to WaMu RMBS trusts when it acquired WaMu and certain of its affiliates in 2008.   Notably, the FDIC and JPMorgan Chase have been engaged in litigation for five years with respect to the latter issue. *See Deutsche Bank Nat'l Trust Co. v. Fed. Deposit Ins. Corp., et al.*, No. 09-cv-1656-RMC (D.D.C.).

Plaintiffs also were especially mindful of the pending appeal to the Second Circuit in *Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago, et al. v. The Bank of New York Mellon*, No. 11-cv-5459-WHP (S.D.N.Y.), in which plaintiff asserted claims for breach of contract and violation of the TIA against Bank of New York Mellon based upon substantially similar wrongdoing as Plaintiffs alleged here.   In the BONY action, Judge Pauley had held that the TIA applied to MBS Certificates, but granted the defendant's request to certify an interlocutory appeal of that issue to the Second Circuit.   The opinion in that appeal is expected shortly and an adverse decision would have eliminated Plaintiffs' TIA claim here.   Additionally, as set forth above, there existed uncertainty concerning the pending class certification motion and *Daubert* motion seeking to exclude the testimony and opinions of Plaintiffs' damages expert, Dr. Hartzmark. If Dr. Hartzmark's damages methodology had been excluded, Plaintiffs' class certification motion might have also been denied and the class's potential recovery would have been substantially reduced, if not eliminated.   In light of the aforementioned risks of continued litigation, the proposed Settlement of $69 million represents a substantial recovery for the Settlement Class.

**VI.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES PURSUANT TO RULE 23**

In reviewing the Parties' proposed Settlement, the Court should certify the proposed Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The Parties have stipulated to certification of the proposed Settlement Class for purposes of settlement only.  *See* Stipulation at ¶ 34.

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement.  *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238–39 (2d Cir. 2012). Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *In re Prudential*, 163 F.R.D. at 205.  "The law in the Second Circuit favors the liberal construction of Rule 23, … and courts may exercise broad discretion when they determine whether to certify a class." *Aramburu v. Healthcare Fin. Servs.*, No. 02 CV 6535 (ARR), 2005 WL 990995, at *2 (E.D.N.Y. Apr. 14, 2005).

A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b).  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).  Nevertheless, the manageability concerns of Rule 23(b)(3) are not at issue.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems … is not a consideration when settlement-only certification is requested.").   Here, the proposed Settlement Class meets all the requirements of Rule 23, there is no likelihood of abuse of the class action device in this settlement context, and the Settlement is fair, reasonable, and subject to the Court's approval.  As set forth below, certification is appropriate because the proposed Settlement Class meets all the requirements of Rule 23(a) and Rule 23(b)(3).

11

A.     **The Settlement Class Satisfies the Requirements of Rule 23(a)**

1.     **Numerosity**

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1).  Numerosity is presumed when a class consists of forty members or more.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Plaintiffs' class certification motion, filed in January 2014, has already identified thousands of unique investors who may be eligible to participate in this Settlement. *See* Pl. Mem. of Law in Support of Class Certification (ECF No. 165), at 21. Accordingly, numerosity with respect to the Settlement Class is easily met.

2.     **Commonality**

Rule 23(a)(2) requires that claims of the members of the proposed Settlement Class involve common questions of law and fact.  Commonality is established if class members have "suffered the same injury," and their claims "depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011).  The allegations in this case, namely that Defendants owed virtually identical contractual and statutory duties to every Settlement Class member with respect to causing the removal of defective Mortgage Loans, and that Defendants employed a single set of policies and procedures causing them to abandon those duties to the detriment of all of the Settlement Class members, creates common questions, the answers to which, will resolve those questions for all Settlement Class members in one stroke.  These common questions include: (1) whether Defendants had actual knowledge of the Servicer's failure to enforce the Covered Trusts' repurchase rights; (2) whether Defendants breached their contractual and statutory duties by failing to provide notice to the Servicer and to the parties to the MBS once the Servicer failed to act; and (3) to what extent Settlement Class members suffered damages as a result of the Trustees' failure to act.  Courts in this District routinely have found these types of common questions, related

to MBS issuances, to satisfy Rule 23(a)(2).  *See N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08 CV 8781 (HB), 2013 WL 6839093, at *2 (S.D.N.Y. Dec. 27, 2013); *Tsereteli v. Residential Asset Securitization Trust, 2006-A8*, 283 F.R.D. 199, 207 (S.D.N.Y. 2012) ("[T]he central issues in this case are common to the claims of all.").  Rule 23(a)(2) is thus satisfied.

### 3.    Typicality

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  The focus of the typicality inquiry is not the plaintiff's behavior, but rather the defendants' actions.  *See Teachers' Ret. Sys. of La. v. ACLN Ltd.*, No. 01 Civ. 11814 (LAP), 2004 WL 2997957, at *4 (S.D.N.Y. Dec. 27, 2004).  The critical question is whether the proposed class representatives and the class can point to the same "common course of conduct" by defendants to support a claim for relief.  *Id.* at 5.  Here, Defendants' uniform practices were the same as to all of the Covered Trusts.  Defendants allegedly failed to give notice to the Servicer of its failure to cause the removal of defective loans and failed to declare an Event of Default despite having actual knowledge of breaches of the representations and warranties.  Thus, Defendants are alleged to have committed the same wrongful acts as to all Settlement Class members, satisfying the Rule 23(a)(3) typicality requirement.

### 4.    Adequate Representation

The requirement of adequacy is satisfied when "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  A district court must inquire whether "'1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'"  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  "In order to defeat a motion for certification, [any conflict of interest] 'must be fundamental.'"  *Id.*  Here, Plaintiffs purchased or otherwise acquired Certificates issued by the Covered Trusts and suffered significant

out-of-pocket losses as a result of the same course of conduct that allegedly injured all other members of the Settlement Class.  Plaintiffs have vigorously prosecuted this litigation, including involvement in discovery efforts, retaining experts, as well as actively directing the settlement process.  Thus, Plaintiffs have no conflicts with the proposed Settlement Class and have an incentive to maximize the recovery of all Settlement Class members.  *See Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, 280 F.R.D. 130, 136 (S.D.N.Y 2012).  Further, Plaintiffs have retained counsel with substantial expertise in complex class action litigations including MBS matters.

**B.     The Settlement Class Representatives' Claims Satisfy the Prerequisites of Rule 23(b)(3)**

**1.     Common Legal and Factual Questions Predominate**

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010).

Here, common questions pertaining to whether the underlying mortgages breached the representations and warranties, and whether the Defendants failed to act when they knew of such defects, predominate over any individual issues that might have been raised.  Furthermore, the application of Plaintiffs' proposed damages methodology to the entire class would have involved the application of common evidence.  That this application would have resulted in varying amounts of damages for each Settlement Class member, "does not defeat certification if the method of calculating damages is common to the class." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008).   Therefore, the Settlement Class fulfills Rule 23(b)(3)'s predominance requirement.

### 2.      A Class Action is Superior to Other Methods of Adjudication

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution…of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by … class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3).

First, only the Plaintiffs have expressed an interest in controlling the prosecution of this case.  Second, this Court is familiar with the relevant facts, claims and defenses, having overseen this Action since April 11, 2012.  Moreover, given the large and geographically dispersed Settlement Class, multiple lawsuits would have risked disparate results, threatening to increase the costs of litigation for all parties, and posing an unnecessary burden on the court system.  Moreover, as the Supreme Court explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."  521 U.S. at 620.  Accordingly, the requirements of Rule 23(b)(3) are satisfied.

In light of the foregoing, all of the requirements of Rules 23(a) and (b) are satisfied, and there are no issues that would prevent the Court from certifying this Settlement Class for settlement purposes, appointing Plaintiffs as class representatives, and appointing Plaintiffs' Counsel as counsel for the Settlement Class.

## VII.   THE FORM AND MANNER OF NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

Federal Rule of Civil Procedure 23(e)(1) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal" (*i.e.*, the proposed

Settlement).  Here, the Notice of Pendency of Class Action and of Proposed Settlement and Final

Approval Hearing (the "Notice") will be disseminated to all persons and entities who fall within

the definition of the Settlement Class and whose names and addresses can be identified with

reasonable effort.  The Claims Administrator[8] will send the Notice, along with a copy of the Proof

of Claim Form, to entities that have already been identified by Plaintiffs during the discovery

process that purchased or held the Certificates and to entities which commonly hold securities in

"street name" as nominees for the benefit of their customers who are the beneficial purchasers of

the securities.[9]  The Parties further propose to supplement the mailed Notice with the Publication

Notice, to be published once in *Investor's Business Daily* and transmitted over *Business Wire*.  A

copy of the Stipulation, the Notice, and the Proof of Claim Form will also be posted on the website

created for the Settlement, www.WaMuTIASettlement.com, as well as Defendant USB's trust

investor website.  The Notice, Proof of Claim Form and Summary Notice are attached to the

Stipulation as Exhibits A-1, A-2 and A-3, respectively, which is attached as Exhibit 1 to the

Weintraub Declaration.

Additionally, Rule 23(h)(1) requires that notice of Plaintiffs' Counsel's motion for

attorneys' fees must also be directed to class members in a reasonable manner.  Fed. R. Civ. P.

23(h)(1).  Here, the proposed Notice satisfies all elements of Rule 23(h)(1), as it notifies the

Settlement Class that Plaintiffs' Counsel will apply to the Court for attorneys' fees in an amount of

no more than 20% of the Gross Settlement Fund and Litigation Expenses not to exceed $3 million.

As outlined in the Preliminary Approval Order, Plaintiffs seek approval of the form and

---

[8] Plaintiffs request the Court's approval of Kurtzman Carson Consultants, LLC ("KCC") to serve as the Claims Administrator for the Settlement. KCC was selected by Plaintiffs' Counsel following a competitive bidding process.

[9] Any Notices returned as undeliverable will be re-mailed to the forwarding address.  If no forwarding address is provided, the Claims Administrator will use reasonable efforts (including, but not limited to an internet search) to locate an updated address and re-mail the Notice to the updated address.

content of the proposed Notice and Publication Notice.  Consistent with Rules 23(c)(2)(B) and 23(e)(1), the proposed "long form" Notice will advise Settlement Class Members of (i) the nature and pendency of the class action; (ii) the definition of the Settlement Class to be certified; (iii) the essential terms of this Settlement, including definition of the Settlement Class and Subject Claims, as well as the scope of claims to be released; and (iv) information regarding Plaintiffs' Counsel's request for attorneys' fees and reimbursement of Litigation Expenses.

The Notice also provides specifics on the date, time and place of the Final Approval Hearing and sets forth the procedures and deadlines for (i) objecting to the Settlement, Plan of Allocation and request for attorneys' fees and reimbursement of Litigation Expenses; (ii) requesting exclusion from the Settlement Class; and (iii) submitting a Proof of Claim Form.  It further describes the binding effect of a judgment on Settlement Class members pursuant to Rule 23(c)(3).

Additionally, the Notice advises the Settlement Class of: (a) the amount of the Settlement (in the aggregate) and the estimated average recovery on a per-pool basis; (b) provides a brief statement explaining the reasons why the Parties are proposing Settlement; (c) states the maximum amount of attorneys' fees and Litigation Expenses that counsel will seek; and (d) provides the names, addresses and telephone numbers of the Claims Administrator and representatives of Plaintiffs' Counsel who will be available to answer questions from Settlement Class members. The proposed Notice therefore meets the required reasonableness standard under Second Circuit law.  *Wal-Mart*, 396 F.3d at 114 ("[T]he settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" (quoting *Weinberger v. Kendrick*, 698 F. 2d 61, 70 (2d Cir. 1982).

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process and Rule 23.  The Notice and Publication Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement[s] and of the options that are open to them in connection with the proceedings."  *Id.* (internal quotation marks omitted).  The manner of providing notice, which includes individual notice by mail to all Settlement Class members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23.  *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008); *Global Crossing*, 225 F.R.D. at 448-49.

## VIII.   PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a date for the Final Approval Hearing, as well as dates for mailing the Notice, publishing the Publication Notice and deadlines for requesting exclusion from the Settlement Class, objecting to the Settlement, submitting Proof of Claim Forms and filing papers in support of the Settlement.  Plaintiffs respectfully propose the following schedule:

| Event | Proposed Date/Deadline | Date/Deadline On or After[10] |
|---|---|---|
| Deadline for mailing the Notice and Proof of Claim Form to Settlement Class members ("Notice Date") | 30 calendar days following the Court's entry of the Preliminary Approval Order | December 21, 2014 |
| Deadline for publishing the Publication Notice | 10 calendar days after the Notice Date | December 31, 2014 |
| Deadline for filing papers in support of final approval of Settlement, Plan of Allocation and Plaintiffs' Counsel's application for Attorneys' Fees and Litigation Expenses | 40 calendar days before Final Approval Hearing | January 30, 2015 |
| Deadline for receipt of exclusion requests or objections | 20 business days before Final Approval Hearing | February 11, 2015 |
| Deadline for filing reply papers | 7 calendar days before Final Approval Hearing | March 4, 2015 |
| Final Approval Hearing | At least 110 calendar days from entry of the Preliminary Approval Order | March 11, 2015 |
| Deadline for submitting Proof of Claim Forms | 120 calendar days after Notice Date | April 20, 2015 |

## IX.   CONCLUSION

At this juncture, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order which will: (i) preliminarily approve the proposed Settlement, (ii) preliminarily certify the proposed Settlement Class for settlement purposes only, (iii) permit notice of the terms of the Settlement to be sent to the Settlement Class, and (iv) schedule a date and time for the Final Approval Hearing to consider approval of the Settlement and related matters following an opportunity for Settlement Class Members to express their views concerning the fairness of the Settlement, the Plan of Allocation, and Plaintiffs' Counsel's request for an award of attorneys' fees

---

[10] The specific proposed dates are respectfully estimated assuming that the Court enters the proposed Preliminary Approval Order on or about November 21, 2014.  In the event that the Court does not enter the proposed Preliminary Approval Order on or before that date, Plaintiffs' Counsel respectfully request that the same separation of dates in the schedule be provided for by the Court.

and reimbursement of Litigation Expenses. For the reasons discussed herein, Plaintiffs respectfully request that the proposed Settlement be preliminarily approved by the Court and the Preliminary Approval Order entered.

Dated: November 7, 2014        **SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**

*/s/ Deborah Clark-Weintraub*
Deborah Clark-Weintraub
Beth A. Kaswan
William C. Fredericks
Max R. Schwartz
Donald A. Broggi
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Tel.: (212) 223-6444
Fax: (212) 223-6334
Email: dweintraub@scott-scott.com
      bkaswan@scott-scott.com
      wfredericks@scott-scott.com
      mschwartz@scott-scott.com
      dbroggi@scott-scott.com

*Counsel for Plaintiffs Policemen's Annuity and Benefit Fund of the City of Chicago and Central States Southeast and Southwest Areas Pension Fund*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll
Julie Goldsmith Reiser
Joshua Devore
1100 New York Avenue, NW
Suite 500 West
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
Email: stoll@cohenmilstein.com
      jreiser@cohenmilstein.com
      jdevore@cohenmilstein.com

- and-

Daniel B. Rehns
Kenneth M. Rehns
88 Pine Street
14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
Email: drehns@cohenmilstein.com
        krehns@cohenmilstein.com

*Counsel for Plaintiffs Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, Iowa Public Employees' Retirement System, and Arkansas Public Employees' Retirement System*

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Andrew L. Zivitz
Sharan Nirmul
Joshua E. D'Ancona
Tyler S. Graden
Jonathan F. Neumann
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
Email: azivitz@ktmc.com
        snirmul@ktmc.com
        jdancona@ktmc.com
        tgraden@ktmc.com
        jneumann@ktmc.com

*Counsel for Plaintiffs Vermont Pension Investment Committee, Washington State Investment Board, Arkansas Teacher Retirement System, City of Tallahassee Retirement System, and Mississippi Public Employees' Retirement System*

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2014, I caused the foregoing brief to be electronically filed with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel.

**SCOTT+SCOTT,     ATTORNEYS     AT LAW, LLP**

*\s\ Deborah Clark-Weintraub*
Deborah Clark-Weintraub
ns