# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| POLICEMEN'S ANNUITY AND BENEFIT FUND OF THE CITY OF CHICAGO et al., <br><br> Plaintiffs, <br><br> - against - <br><br> BANK OF AMERICA, N.A. (as Trustee Under Various Pooling and Servicing Agreements) and U.S. BANK NATIONAL ASSOCIATION (as Trustee Under Various Pooling and Servicing Agreements), <br><br> Defendants. | CASE NO. 1:12-CV-02865-KBF <br><br> CASE NO. 1:13-CV-05978-KBF (consolidated) |

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement (together with the exhibits hereto, the "**Stipulation**") is entered into as of November 7, 2014 by and between (i) Plaintiffs Policemen's Annuity and Benefit Fund of the City of Chicago; Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity; Iowa Public Employees' Retirement System; Arkansas Public Employees' Retirement System; Vermont Pension Investment Committee; Washington State Investment Board; Arkansas Teacher Retirement System; Public Employees' Retirement System of Mississippi; City of Tallahassee Retirement System; and Central States, Southeast and Southwest Areas Pension Fund (each a "**Plaintiff**," and collectively "**Plaintiffs**"), on behalf of themselves and all members of the Settlement Class as defined below; and (ii) Defendants Bank of America, N.A. ("**BANA**") and U.S. Bank National Association ("**U.S. Bank**") (each a "**Defendant**," collectively "**Defendants**," and together with Plaintiffs, the "**Parties**") in their individual capacities and their capacities as current, former, or successor trustees of the Covered Trusts as defined below.

<u>RECITALS</u>

WHEREAS on April 11, 2012, Policemen's Annuity and Benefit Fund of the City of Chicago filed a putative class action in the United States District Court for the Southern District of New York (the "**Court**") entitled *Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of America, NA (as Trustee Under Various Pooling and Serving Agreements), and U.S. Bank National Association (as Trustee Under Various Pooling and Servicing Agreements)* (case number 1:12-CV-02865-KBF);

WHEREAS the complaint asserted claims for alleged breaches of contract, alleged breaches of the implied covenant of good faith and fair dealing, and alleged violations of the Trust Indenture Act against BANA as former trustee, and against U.S. Bank as current trustee, of various residential mortgage-backed securities ("**RMBS**") trusts;

WHEREAS various amended and/or corrected complaints thereafter were filed in the action, and various motions to dismiss were filed and ruled upon;

- 1 -

WHEREAS on August 23, 2013, Vermont Pension Investment Committee and Washington State Investment Board filed a similar putative class action complaint entitled *Vermont Pension Investment Committee and Washington State Investment Board, Individually and on Behalf of All Others Similarly Situated v. Bank of America, National Association and U.S. Bank National Association* (case number 1:13-CV-05978-KBF);

WHEREAS on October 18, 2013, the Court entered an order consolidating the two cases through summary judgment under case number 1:12-CV-02865-KBF (collectively, the "**Action**");

WHEREAS Plaintiffs thereafter filed a Consolidated Third Amended Class Action Complaint alleging claims for alleged breaches of contract and alleged violations of the Trust Indenture Act with respect to various RMBS trusts;

WHEREAS on January 17, 2014, Plaintiffs filed a Motion for Class Certification and Appointment of Class Representatives and Class Counsel, seeking to certify two classes (one as against BANA and one as against U.S. Bank), which motion Defendants opposed;

WHEREAS on April 17, 2014, BANA filed a motion under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to exclude the opinions contained in one of the expert reports Plaintiffs submitted in support of their class certification motion, which motion Plaintiffs opposed;

WHEREAS in light of the Parties' settlement discussions, the Court has terminated, without prejudice, the class certification motion and the *Daubert* motion as moot;

WHEREAS the Parties, with the assistance of a neutral mediator, have reached an agreement in principle to settle the Action, subject to the approval of the Court;

WHEREAS the Parties engaged in extensive discovery prior to participating in mediation, including the production of more than 3 million pages of documents from the Parties and third parties, and the taking of 33 party and non-party depositions;

WHEREAS based upon Plaintiffs' factual investigation, the extensive discovery they took, their consultation with numerous experts they retained, their research into the applicable

law, and their consideration of the risks and uncertainties of further litigation, each of the

Plaintiffs and their counsel, without any admission or concession of any lack of merit in any

aspect of the claims asserted in the Action, have concluded that the terms and conditions of this

Stipulation are fair, reasonable, adequate, and in the best interests of Plaintiffs and the Settlement

Class as defined below;

WHEREAS Defendants expressly deny any and all allegations of wrongdoing, fault,

liability, or damages of any nature whatsoever, but in light of the expenses, risks, and

uncertainties of further litigation, are willing to settle on the terms set forth below;

NOW THEREFORE, in consideration of the covenants and promises set forth below, and

subject to the approval of the Court, the Parties hereby stipulate and agree as follows:

## DEFINITIONS

1.      Boldfaced terms defined in the provisions above shall have the meanings set forth

therein.

2.      "**Authorized Claimant**" means a Settlement Class member that submits a timely

and valid Proof of Claim Form to the Claims Administrator that is approved for payment from

the Net Settlement Fund.

3.      "**Certificates**" means any and all RMBS pass-through certificates issued by the

Covered Trusts.

4.      "**Claimant**" means a person or entity that submits a Proof of Claim Form to the

Claims Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

5.      "**Claims**" means any and all claims, causes of action, demands, rights, liabilities,

losses, obligations, damages, debts, suits, judgments, and controversies of any kind, nature, and

description whatsoever, (i) whether past, present, known, unknown, suspected, unsuspected,

concealed, hidden, accrued, unaccrued, contingent, or non-contingent; (ii) whether individual,

class, collective, mass, direct, indirect, derivative, or of any other type; (iii) whether at law, in

equity, or otherwise; (iv) whether based in contract, tort, statute, regulation, or otherwise;

(v) whether based on or arising under federal, state, local, foreign, or other statutory, regulatory,

common, or other law or rule; (vi) that previously existed; currently exist; or would exist with discovery, with the giving of notice, or with a default, delinquency, or other loss on a mortgage loan in a Covered Trust or RMBS certificate issued by a Covered Trust.

      6.     "**Claims Administrator**" means Kurtzman Carson Consultants.

      7.     "**Covered Trusts**" means the following WaMu Mortgage Pass-Through Certificates Series ("WaMu") or WaMu Mortgage Pass-Through Certificates WMALT Series ("WMALT") RMBS trusts that are or have been at issue in the Action:

| | | |
|---|---|---|
| WaMu 2005-AR15 Trust | WaMu 2006-AR19 Trust | WMALT 2006-AR7 Trust |
| WaMu 2005-AR17 Trust | WMALT 2005-9 Trust | WMALT 2006-AR8 Trust |
| WaMu 2005-AR19 Trust | WMALT 2006-1 Trust | WMALT 2006-AR9 Trust |
| WaMu 2006-AR2 Trust | WMALT 2006-2 Trust | WMALT 2006-AR10 Trust |
| WaMu 2006-AR6 Trust | WMALT 2006-3 Trust | WaMu 2007-OA3 Trust |
| WaMu 2006-AR7 Trust | WMALT 2006-4 Trust | WaMu 2007-OA4 Trust |
| WaMu 2006-AR8 Trust | WMALT 2006-5 Trust | WaMu 2007-OA5 Trust |
| WaMu 2006-AR9 Trust | WMALT 2006-6 Trust | WMALT 2007-OA3 Trust |
| WaMu 2006-AR10 Trust | WMALT 2006-7 Trust | WMALT 2007-HY2 Trust |
| WaMu 2006-AR11 Trust | WMALT 2006-8 Trust | WaMu 2007-HY1 Trust |
| WaMu 2006-AR12 Trust | WMALT 2006-9 Trust | WaMu 2007-HY2 Trust |
| WaMu 2006-AR13 Trust | WMALT 2006-AR1 Trust | WaMu 2007-HY3 Trust |
| WaMu 2006-AR14 Trust | WMALT 2006-AR2 Trust | WaMu 2007-HY4 Trust |
| WaMu 2006-AR15 Trust | WMALT 2006-AR3 Trust | WaMu 2007-HY5 Trust |
| WaMu 2006-AR16 Trust | WMALT 2006-AR4 Trust | WaMu 2007-HY6 Trust |
| WaMu 2006-AR17 Trust | WMALT 2006-AR5 Trust | WaMu 2007-HY7 Trust |
| WaMu 2006-AR18 Trust | WMALT 2006-AR6 Trust | |

      8.     "**Effective Date**" means the date on which the Judgment Order becomes Final.

9.      "**Escrow Account**" means an escrow account maintained by and under the exclusive control of Plaintiffs' Counsel and subject to the jurisdiction of the Court.

10.      "**Final**" means, with respect to any order or ruling of any court, that such order or ruling is not subject to further review on appeal or otherwise.  Without limitation, an order or ruling becomes "Final" when:

> (i)      it is not subject to any further reconsideration by the court issuing the order or ruling; and

> (ii)     no appeal has been filed and the prescribed time for commencing any appeal has expired; or an appeal has been filed and either (a) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (b) the order or ruling has been affirmed in all material respects and the prescribed time, if any, for commencing any further appeal has expired.

For purposes of this paragraph, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of *certiorari* or *mandamus*, and any similar proceeding.  Any appeal or other proceeding pertaining solely to an order or ruling adopting or approving a Plan of Allocation and/or to an application for attorneys' fees and/or Litigation Expenses shall not in any way delay or preclude any judgment in the Action from becoming Final.

11.      "**Final Approval Hearing**" means the hearing set by the Court under Federal Rule of Civil Procedure Rule 23(e) to consider final approval of this Settlement.

12.      "**Investment Vehicle**" means any pooled investment fund (such as mutual funds, mutual fund families, exchange-traded funds, funds of funds, and hedge funds), in which Defendants, JPMorgan Chase & Co., Washington Mutual Bank, the Federal Deposit Insurance Corporation as potential successor to Washington Mutual Bank, or any of their respective parents, subsidiaries, or affiliates has a direct or indirect interest (or as to which any of the foregoing acts as investment advisor) but in which the Defendants, JPMorgan Chase & Co.,

Washington Mutual Bank, the Federal Deposit Insurance Corporation as potential successor to Washington Mutual Bank, or any of their respective parents, subsidiaries, or affiliates is not a majority owner or does not hold a majority beneficial interest.

13.     "**Judgment Order**" means an order to be entered by the Court approving the Settlement that is substantially identical in all material respects to the form attached hereto as Exhibit A-4, or as modified by written agreement of all Parties.

14.     "**Litigation Expenses**" means the reasonable costs and expenses incurred by Plaintiffs' Counsel in connection with prosecuting the Action for which they apply to the Court for reimbursement from the Settlement Fund.

15.     "**Net Settlement Fund**" means the Settlement Fund less any (i) Taxes and Tax Costs; (ii) Notice and Administration Costs; (iii) Litigation Expenses awarded by the Court; (iv) attorneys' fees awarded by the Court; and (v) other costs, expenses, or amounts approved by the Court for disbursement from the Settlement Fund prior to distribution to Authorized Claimants.

16.     "**Notice**" means the Notice of Pendency of Class Action and of Proposed Settlement and Final Approval Hearing (substantially in the form attached hereto as Exhibit A-1), which is to be sent to members of the Settlement Class.

17.     "**Notice and Administration Costs**" means the reasonable costs, expenses, and fees that are incurred by the Claims Administrator in connection with providing notice to the Settlement Class, administering the claims process, and administering the Settlement Fund. Notice and Administration Costs include, without limitation, (i) the reasonable costs of publishing the Publication Notice and of printing and mailing the Notice; (ii) reasonable reimbursements to nominees for forwarding the Notice and the Proof of Claim Form to beneficial owners; (iii) reasonable administrative expenses actually incurred and fees reasonably charged by the Claims Administrator in connection with processing Proof of Claim Forms; and (iv) reasonable expenses incurred in connection with the Escrow Account.

18.     "**Out-Of-Pocket Loss**" means a monetary loss on an investment in a Certificate as determined pursuant to the following formula: (purchase price × quantity purchased), minus principal received, minus (current/sale price × current/sale position).[1] If the formula yields a positive number, an Out-Of-Pocket Loss shall be deemed to exist; whereas if the formula yields a zero or a negative number, an Out-Of-Pocket Loss shall be deemed not to exist.  For purposes of the formula, the "current price" shall be deemed to be the price reported by Interactive Data Corporation as of September 22, 2014.  If Interactive Data Corporation does not provide a price for a Certificate, the price of the most junior Certificate backed by the same loan group(s) that is senior to the Certificate and for which the Interactive Data Corporation price as of September 22, 2014 is available, will be used.

19.     "**Plaintiffs' Counsel**" means the law firms of Scott+Scott, Attorneys at Law, LLP; Cohen Milstein Sellers & Toll PLLC; and Kessler Topaz Meltzer & Check LLP.

20.     "**Plan of Allocation**" means the proposed plan of allocation of the Net Settlement Fund set forth in the Notice, or such other plan of allocation as the Court may order.

21.     "**Preliminary Approval Order**" means an order to be entered by the Court preliminarily approving the Settlement, preliminarily certifying the Settlement Class for Settlement purposes only, and directing that Notice be provided to the Settlement Class that is substantially identical in all material respects to the form attached hereto as Exhibit A, or as modified by written agreement of all Parties.

22.     "**Proof of Claim Form**" means the Proof of Claim and Release Form (substantially in the form attached as Exhibit A-2 hereto) that a Claimant must complete and submit if it seeks to be eligible to share in a distribution of the Net Settlement Fund.

---

[1] For the sake of clarity, the following example illustrates application of the formula: If a current holder of a Certificate paid a purchase price of $1 per unit (par) for 100,000 units, received principal over time of $20,000, and suffered realized losses over time of $10,000, and if the current price of the Certificate is $0.80 per unit, the investor would have an Out-Of-Pocket Loss of $24,000, calculated as: ($1 per unit × 100,000 units purchased), minus $20,000 in principal received, minus ($0.80 per unit × 70,000 units currently held).

23.   "**Publication Notice**" means the summary notice (substantially in the form attached as Exhibit A-3 hereto) to be published as set forth in the Preliminary Approval Order.

24.   "**Related Parties**" means an entity's past, present, or future representatives, predecessors, successors, assigns, attorneys, accountants, parents, subsidiaries, affiliates, insurers, reinsurers, employers, employees, members, directors, officers, and agents, in their capacities as such.

25.   "**Released Parties**" means Defendants in their respective individual and trustee capacities (including, in the case of BANA, as successor trustee to LaSalle Bank National Association; and in the case of U.S. Bank, as successor trustee to BANA), the Covered Trusts, and the Related Parties of each of the foregoing.

26.   "**Releasing Parties**" means each of the Plaintiffs, the Settlement Class members, and their respective representatives, spouses, domestic partners, trustees, heirs, executors, administrators, beneficiaries, affiliates, subsidiaries, corporate parents, successors, and assigns in their capacities as such (including but not limited to persons or entities that purchase or otherwise acquire, beneficially or otherwise, any of the Certificates from any of the Plaintiffs or Settlement Class members or their direct or indirect successors on or after the deadline for submitting requests for exclusion).

27.   "**Settlement**" means the settlement embodied in this Stipulation.

28.   "**Settlement Class**" means Plaintiffs and every other person and entity that purchased or otherwise acquired any of the Certificates at any time (including but not limited to any beneficial owners), and that

(i)   sold or otherwise disposed of the Certificates as of the date the Parties enter into this Stipulation, or

(ii)   did not sell or otherwise dispose of the Certificates as of the date the Parties enter into this Stipulation, but suffered an Out-Of-Pocket Loss on an investment in a Certificate as of such date;

*provided, however*, that "Settlement Class" shall not include (a) Defendants, JPMorgan Chase & Co., Washington Mutual Bank, and their respective parents, subsidiaries, and affiliates other than Investment Vehicles; (b) the FDIC as a potential successor to Washington Mutual Bank; (c) the named plaintiffs set forth in the July 16, 2014 Amended Complaint in the derivative action entitled *BlackRock Allocation Target Shares: Series S Portfolio et al. v. U.S. Bank National Association*, Index No. 651864/2014 (N.Y. Sup. Ct. N.Y. Cnty.) (the "**BlackRock Litigation**"); and (d) any person or entity that submits a valid and timely request for exclusion from the Settlement Class in accordance with the requirements set forth in the Notice.

29.     "**Settlement Fund**" means the sum of sixty-nine million United States dollars and no cents ($69,000,000.00) deposited into the Escrow Account.

30.     "**Subject Claims**" means any and all Claims against the Released Parties that arise out of or relate to the facts, acts, omissions, transactions, or occurrences that have been alleged to form a basis of liability, or that could have been alleged to form a basis of liability, in the Action related to the Covered Trusts (including facts, acts, omissions, transactions, or occurrences alleged to be, or that could be alleged to be, past, present, or future recurrences or continuations of the alleged breaches of contract or other duty at issue in the Action).  For the avoidance of doubt, "Subject Claims" includes, but is not limited to, any and all Claims against the Released Parties that arise out of or relate to (i) documents missing or allegedly missing from loan files that were delivered to the Covered Trusts and/or the custodians for the Covered Trusts; (ii) breaches or alleged breaches of duty or of representations or warranties by the sellers of mortgage loans to the Covered Trusts; and/or (iii) breaches or alleged breaches of duty (whatever the source of such duty, be it contract, common law, statute, or other source) relating to (i) and (ii) by Defendants, or by the servicers, master servicers, or custodians of the mortgage loans in the Covered Trusts, related to the Covered Trusts.

31.     "**Supplemental Agreement**" means a separate, confidential agreement entered into by the Parties that permits Defendants to terminate this Stipulation and the Settlement under certain conditions specified therein.

32.     "**Taxes**" means all federal, state, local, and/or other taxes of any kind on any income earned by the Settlement Fund.

33.     "**Tax Costs**" means the reasonable expenses and costs incurred by Plaintiffs' Counsel in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, reasonable fees and expenses of unaffiliated tax attorneys and accountants engaged by Plaintiffs' Counsel for such purposes).

## CERTIFICATION OF SETTLEMENT CLASS

34.     The Settlement Class.  The Parties stipulate to: (i) the certification, for settlement purposes only, of the Settlement Class as defined above, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3); (ii) the appointment of Plaintiffs as class representatives; and (iii) the appointment of Plaintiffs' Counsel as class counsel.

35.     No Admission Regarding Certification of Litigation Class.  Defendants' stipulation to certification of the Settlement Class for settlement purposes only is not, and shall not be deemed to be, an admission that certification of a class would be permissible or appropriate for any other purpose, including litigation purposes.

## RELEASE OF SUBJECT CLAIMS AND RELATED MATTERS

36.     Releases.  Pursuant to the Judgment Order, upon the Effective Date:

(i)     All Releasing Parties shall have, and shall be deemed to have, fully, finally, and forever released, relinquished, waived, discharged, and dismissed with prejudice all Subject Claims as to all Released Parties, *provided, however*, that non-members of the Settlement Class shall not be deemed to have done so with respect to (a) any Certificate the non-member purchased or acquired from an unaffiliated Settlement Class member (or from a direct or indirect successor of a Settlement Class Member that is not a mutual affiliate of the non-member and the Settlement Class member) prior to the deadline for submitting requests for exclusion, or (b) any Certificate the non-member purchased or acquired on

or after the deadline for submitting requests for exclusion that were held by another non-member as of such deadline (unless the two non-members are mutual affiliates of a Settlement Class member).  The purpose of this proviso is to ensure that, although all future purchasers or acquirers of Certificates from Settlement Class members (or the direct or indirect successors of Settlement Class members) are bound by the releases given by Settlement Class members with respect to such Certificates, non-members of the Settlement Class (whether because they were not part of it in the first place, or because they opt out) are not bound by such releases with respect to Certificates the non-members held as of the deadline for submitting requests for exclusion, and that other non-members that subsequently purchase or acquire their Certificates likewise are not bound. The portions of the proviso that concern affiliates are designed to ensure that the proviso's purpose cannot be evaded through transactions between or among affiliates.  Settlement Class members may not assert Subject Claims against the Released Parties under any circumstances (*e.g.*, they may not file such lawsuits); however, nothing in this subparagraph or in paragraph 36(ii) or 39 precludes a Settlement Class member that purchases or otherwise acquires a Certificate from an unaffiliated non-member on or after the deadline for submitting requests for exclusion from receiving or otherwise benefitting from any recovery in the BlackRock Litigation or any other litigation that may be brought by or on behalf of the Covered Trusts with respect to such Certificate.[2]

---

[2] For the sake of clarity, the following example illustrates application of this subparagraph in the case of non-affiliates: Investor A purchases three classes of Certificates, class 1, class 2, and class 3.  Investor A thereafter sells the class 2 Certificate to Investor B and the class 3 Certificate to Investor C prior to the deadline for submitting requests for exclusion.  On or after that deadline, (i) Investors B and C opt out, and thus are not part of the Settlement Class, (ii) Investor A remains in the Settlement Class, (iii) Investor

(ii)    Upon consideration by the Court of the Settlement and all supporting papers therewith as well as any objections thereto, and to the extent and only the extent thereafter ordered by the Court in the Judgment Order, the Covered Trusts (or if the Court so orders, U.S. Bank solely in its trustee capacity on behalf of the Covered Trusts) shall be deemed to have fully, finally, and forever released, relinquished, waived, discharged, and dismissed with prejudice the Covered Trusts' rights to recoveries against the Released Parties from Subject Claims, including in the BlackRock Litigation, that would flow to Releasing Parties through the Covered Trusts' waterfalls or otherwise.  For the avoidance of doubt, such releases, relinquishments, waivers, discharges, and dismissals shall not apply to any portion of any recoveries from the Released Parties that would not flow to Releasing Parties through the Covered Trusts' waterfalls or otherwise (*i.e.*, any portions that would flow to investors that are not Releasing Parties). This subparagraph reflects agreements set forth in this Stipulation and is designed to ensure that Defendants and the other Released Parties do not face lingering indirect monetary exposure, in connection with the same or similar Claims, to investors that choose to participate in the Settlement and

---

A sells the class 1 Certificate to Investor D, and (iv) Investor A buys the class 3 Certificate from Investor C.  Under these circumstances, neither Investor A nor Investor D can assert any claims associated with the class 1 Certificate.  However, Investor B can assert Claims associated with the class 2 Certificate it purchased from Investor A.  Investor A cannot assert Claims associated with the class 3 Certificate it purchased from Investor C (but Investor A is not precluded from receiving and retaining a recovery in the BlackRock Litigation or any other litigation brought by or on behalf of a Covered Trust against a Released Party with respect to the class 3 Certificate).  For the sake of further clarity, the following example illustrates application of this subparagraph in the case of affiliates: Investor X1 purchases two classes of certificates, class 4 and class 5.  Investor X1 sells the class 4 certificate to its affiliate Investor X2, and sells the class 5 certificate to a non-affiliate Investor Y, prior to the deadline for submitting requests for exclusion.  Investor Y thereafter sells the class 5 certificate to Investor X2, also prior to the deadline for submitting requests for exclusion.  Thereafter, Investor X1 remains in the Settlement Class, but Investors X2 and Y opt out.  In these circumstances, Investor X2 cannot assert claims relating to the class 4 certificate that it purchased from its affiliate Investor X1, but can assert claims relating to the class 5 certificate that it purchased from its non-affiliate Investor Y.

their successors and assigns; while ensuring that the rights of investors that are not Releasing Parties are not affected.[3]

(iii)   The Released Parties shall have, and shall be deemed to have, fully, finally, and forever released, relinquished, waived, discharged, and dismissed with prejudice all Claims against Plaintiffs and Plaintiffs' Counsel arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Action or the Subject Claims (except Claims to enforce this Stipulation or for breach of this Stipulation).

37.   <u>Unknown Claims</u>.  Pursuant to the Judgment Order, upon the Effective Date, all Releasing Parties; U.S. Bank on behalf of itself (and the Covered Trusts to the extent ordered by the Court in the Judgment Order); and the Released Parties shall have, and shall be deemed to have, waived, to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred by California Civil Code § 1542 (and any similar provision of any other jurisdiction) in connection with the releases set forth in the preceding paragraph.  Section 1542 provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Releasing Parties; U.S. Bank on behalf of itself (and the Covered Trusts to the extent ordered by the Court in the Judgment Order); and the Released Parties, after conferring with their

---

[3] If the Court orders that the Covered Trusts are to be the entities providing releases under this subparagraph, and if in the future any court or other tribunal determines that it is not the Covered Trusts, but U.S. Bank in its trustee capacity, that is the holder of the Subject Claims, then U.S. Bank in its trustee capacity shall be deemed to have provided releases under this subparagraph.  Conversely, if the Court orders that U.S. Bank in its trustee capacity is to be the entity providing releases under this subparagraph, and if in the future any court or other tribunal determines that it is not U.S. Bank in its trustee capacity, but the Covered Trusts, that are the holders of the Subject Claims, then the Covered Trusts shall be deemed to have provided releases under this subparagraph.  The purpose of these provisions is to ensure that the releases contemplated by this subparagraph are effective regardless of any arguments any litigant in the future may make, or any court or other tribunal may accept, concerning whether it is the Covered Trusts, or U.S. Bank as trustee, that holds the Subject Claims and the right to any recovery on the Subject Claims.

counsel, acknowledge that they hereafter may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Claims and rights released by the preceding paragraph.  Nevertheless, upon the Effective Date, they intend for the releases set forth in the preceding paragraph to extend to all Claims and rights encompassed therein, whether known, unknown, suspected, unsuspected, concealed, hidden, accrued, unaccrued, contingent, or non-contingent.  The provisions of this paragraph were separately bargained for and are material terms of this Stipulation.

38.    <u>No Prosecution of Subject Claims</u>.  Pursuant to the Judgment Order, upon the Effective Date all Releasing Parties shall be permanently enjoined from:

(i)      asserting or pursuing any of the Subject Claims against any of the Released Parties, whether directly, indirectly, or derivatively, whether on their own behalf, on behalf of a Covered Trust, or otherwise, and whether alone or in conjunction with others, and

(ii)      directing, encouraging, instigating, voting in favor of, joining, or fomenting in any way the assertion or pursuit by any person or entity (including any of the Covered Trusts or any trustee of any of the Covered Trusts) of any of the Subject Claims against any of the Released Parties;

*provided, however*, that non-members of the Settlement Class shall not be so enjoined with respect to (a) any Certificate the non-member purchased or acquired from an unaffiliated Settlement Class member (or from a direct or indirect successor of a Settlement Class Member that is not a mutual affiliate of the non-member and the Settlement Class member) prior to the deadline for submitting requests for exclusion, or (b) any Certificate the non-member purchased or acquired on or after the deadline for submitting requests for exclusion that were held by another non-member as of such deadline (unless the two non-members are mutual affiliates of a Settlement Class member).

39.    <u>Assignment</u>.  Pursuant to the Judgment Order, upon the Effective Date, all Releasing Parties shall have, and shall be deemed to have, (i) irrevocably assigned to BANA any

- 14 -

and all rights they may have to receive (directly or indirectly, including through the Covered

Trusts' waterfalls) any recoveries from any of the Released Parties in connection with any of the

Subject Claims asserted in any derivative or other litigation by or on behalf of a Covered Trust;

and (ii) agreed, in the event they learn that such recoveries have been paid to them or their

nominees, to use their best efforts to notify BANA within 45 days.  Notwithstanding the

foregoing sentence, non-members of the Settlement Class shall not be deemed to have provided

such an assignment with respect to (i) any Certificate the non-member purchased or acquired

from an unaffiliated Settlement Class member (or from the direct or indirect successor of a

Settlement Class Member that is not a mutual affiliate of the non-member and the Settlement

Class member) prior to the deadline for submitting requests for exclusion; or (ii) any Certificate

the non-member purchased or acquired on or after the deadline for submitting requests for

exclusion that were held by another non-member as of such deadline (unless the two non-

members are mutual affiliates of a Settlement Class member).  The purpose of the foregoing

provisions concerning assignments is to ensure that if, contrary to the intent of the Parties, any

court or other tribunal in any derivative or other litigation by or on behalf of a Covered Trust

fails to give full effect to the limited releases provided in paragraph 36(ii), such limited releases

nevertheless shall not be rendered illusory from an economic point of view.

<u>**ESTABLISHMENT AND USE OF SETTLEMENT FUND**</u>

40.    <u>Establishment of Settlement Fund</u>.  BANA, on behalf of both Defendants, shall

deposit or cause to be deposited the sum of sixty-nine million United States dollars and no cents

($69,000,000.00) into the Escrow Account within 15 business days after entry of the Preliminary

Approval Order.  BANA shall not have any further obligation, and U.S. Bank shall have no

obligation, to make any payment into the Escrow Account at any time or for any reason.

41.    <u>Settlement Fund in Custody of Court</u>.  All funds held in the Escrow Account shall

be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the

Court except to the extent the funds are distributed or returned pursuant to the terms of this

Stipulation and/or order of the Court.  No portion of the Settlement Fund shall be disbursed from the Escrow Account except as provided herein or as ordered by the Court.

      42.     <u>Investment of Settlement Fund</u>.  Plaintiffs' Counsel shall invest any funds in the Escrow Account in excess of $250,000 in United States Treasury Bills having maturities of 180 or fewer days, or money market mutual funds composed exclusively of investments secured by the full faith and credit of the United States Government, or an account fully insured by the United States Federal Deposit Insurance Corporation.  Plaintiffs' Counsel may invest any funds in the Escrow Account of $250,000 or less in an interest-bearing account insured by the United States Federal Deposit Insurance Corporation, or money market mutual funds composed exclusively of investments secured by the full faith and credit of the United States government. All risks related to the investment of the Settlement Fund pursuant to these guidelines shall be borne by the Settlement Fund.  If the Effective Date occurs, any interest earned on the Settlement Fund shall be for the benefit of the Settlement Class.  If the Effective Date does not occur, any interest earned on the Settlement Fund shall be for the benefit of BANA, and paragraph 66 below shall govern.

      43.     <u>Use of Settlement Fund</u>.  The Settlement Fund shall be used to pay any (i) Taxes and Tax Costs; (ii) Notice and Administration Costs pursuant to paragraph 46 below; (iii) Litigation Expenses awarded by the Court; (iv) attorneys' fees awarded by the Court; and (v) other costs, expenses, or amounts approved by the Court for disbursement from the Settlement Fund prior to distribution to Authorized Claimants.  The balance remaining in the Settlement Fund (the Net Settlement Fund) shall be distributed to Authorized Claimants in accordance with the Plan of Allocation.

      44.     <u>Qualified Settlement Fund</u>.  The Settlement Fund is intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1.  Plaintiffs' Counsel, as administrators of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in

Treasury Regulation § 1.468B-2(k)) for the Settlement Fund.  Such returns shall be consistent with this paragraph and in all events shall reflect that all Taxes on the income earned on the Settlement Fund shall be paid out of the Settlement Fund.  Plaintiffs' Counsel also shall be solely responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund.  Upon written request, Defendants will provide promptly to Plaintiffs' Counsel the statement described in Treasury Regulation § 1.468B-3(e).  Plaintiffs' Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out the terms and intent of this paragraph (including, as necessary, making a "relation-back election" as described in Treasury Regulation § 1.468B-1(j)), and to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

45.     Payment of Taxes.  All Taxes shall be paid out of the Settlement Fund, and shall be timely paid by Plaintiffs' Counsel or the Claims Administrator, without separate order of the Court.  Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes (including any interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein. The Settlement Fund shall indemnify and hold all Released Parties harmless for any Taxes and related expenses of any kind whatsoever (including, without limitation, taxes payable by reason of any such indemnification).  Defendants shall notify Plaintiffs' Counsel promptly if Defendants receive any notice of any claim for Taxes relating to the Settlement Fund.

46.     Payment of Notice and Administration Costs and Tax Costs.  Prior to the Effective Date, Plaintiffs' Counsel may pay from the Escrow Account, without further approval from Defendants or separate order of the Court, actual and reasonable Notice and Administration Costs and Tax Costs in an aggregate amount not to exceed $500,000.  If, prior to the Effective Date, Plaintiffs' Counsel determine that a greater amount is required, Plaintiffs' Counsel and

Defendants' counsel shall attempt to reach an agreement on the additional amounts to be expended, and upon such agreement, such additional amounts may be expended without further order of the Court.  Failing agreement, Plaintiffs' Counsel may apply to the Court for leave to pay the additional amounts.  If the Settlement is terminated or the Effective Date otherwise does not occur, any Notice and Administration Costs and Tax Costs actually incurred and paid or payable as of the date of termination shall not be returned or repaid to BANA.

47.     No Reversion.  The Settlement is not a claims-made settlement.  Upon the occurrence of the Effective Date, no Defendant, Released Party, or any other person or entity who or which paid any portion of the Settlement Fund shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

**ATTORNEYS' FEES AND LITIGATION EXPENSES**

48.     Payment of Attorneys' Fees and Litigation Expenses.  Plaintiffs or Plaintiffs' Counsel may apply to the Court for an award of attorneys' fees and Litigation Expenses. Defendants shall take no position with respect to whether or in what amounts attorneys' fees or Litigation Expenses should be awarded.  The timing of any award shall be determined by the Court.

49.     Not a Condition of Settlement.  An award of attorneys' fees and/or Litigation Expenses is not a necessary term of this Stipulation and is not a condition hereof.  Neither Plaintiffs nor Plaintiffs' Counsel may cancel or terminate this Stipulation or the Settlement based on the Court's or any appellate court's rulings with respect to attorneys' fees and/or Litigation Expenses.

**NOTICE AND CLAIMS PROCESS**

50.     Notice.  In accordance with the terms of the Preliminary Approval Order, Plaintiffs' Counsel shall cause the Claims Administrator to (i) mail the Notice and the Proof of Claim Form to those members of the Settlement Class that have been identified through reasonable effort; (ii) publish the Publication Notice pursuant to the terms of the Preliminary Approval Order or on such other terms as the Court may order; and (iii) otherwise comply with

the terms of the Preliminary Approval Order with respect to the giving of Notice.  U.S. Bank, as trustee for the Covered Trusts, shall post the Notice on the U.S. Bank Trust Investor Reporting website through the date of the Final Approval Hearing.

51.     CAFA Notice.  Not later than ten (10) days after this Stipulation is filed with the Court, Defendants shall provide notice of the proposed Settlement to appropriate federal and state officials to the extent required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

52.     Administration of Claims Process.  The Claims Administrator shall administer the process of receiving, reviewing, approving or denying, and paying claims submitted on Proof of Claim Forms, subject to the jurisdiction of the Court.

53.     Submission of Proof of Claim Forms.  Any Proof of Claim Forms must be submitted by the date specified in the Preliminary Approval Order and the Notice, unless such deadline is extended by order of the Court.  If a Proof of Claim Form is submitted by first-class mail in accordance with the instructions on the form, it shall be deemed submitted on the date of the postmark.  Otherwise, a Proof of Claim Form shall be deemed submitted when received by the Claims Administrator.

54.     Failure Timely to Submit Proof of Claim Form.  Any member of the Settlement Class that does not timely submit a valid Proof of Claim Form shall not be entitled to receive any distribution from the Net Settlement Fund.  Unless such member has been excluded from the Settlement Class by having submitted a timely and valid request for exclusion, such member nevertheless shall be bound by all the terms of this Stipulation and of the Settlement, including the terms of the Judgment Order and the releases, injunctions, and assignments provided for therein.

55.     Submission to Jurisdiction of Court.  Each Claimant and each Settlement Class Member shall be deemed to have submitted to the jurisdiction of the Court with respect to any Proof of Claim Form submitted by the Claimant, and with respect to enforcement of the judgment, including but not limited to the Court's jurisdiction to enforce the releases, injunctions, and assignments provided for in the Judgment Order.  Each Proof of Claim Form

will be subject to investigation and discovery under the Federal Rules of Civil Procedure, but only as to the Claimant's status as a Settlement Class member and the validity and amount of the Claimant's claim set forth on the Proof of Claim Form.  All proceedings with respect to the administration, processing, and determination of claims on Proof of Claims Forms and the determination of all controversies related thereto, including disputed questions of law and fact with respect to the validity of any claim submitted on any Proof of Claim Form, shall be subject to the jurisdiction of the Court.

56.     <u>Distribution of Net Settlement Fund</u>.  After the Effective Date has occurred and the claims administration process has been completed, Plaintiffs shall move the Court for an order (i) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of claims and approving any fees and expenses not previously applied for, including the fees and expenses of the Claims Administrator; and (ii) directing that the Net Settlement Fund be distributed from the Escrow Account.  Upon entry of such an order, the Claims Administrator shall distribute the Net Settlement Fund from the Escrow Account to Authorized Claimants pursuant to the Plan of Allocation.

57.     <u>Distributions Final and Conclusive</u>.  The payments provided for in the preceding paragraph shall be final and conclusive as against any and all members of the Settlement Class. All members of the Settlement Class whose claims on their Proof of Claim Forms are not valid shall not receive distributions from the Net Settlement Fund, but otherwise shall be bound by all the terms of this Stipulation and of the Settlement, including the terms of the Judgment Order and the releases, injunctions, and assignments provided for therein.  No person or entity shall have any Claim against Plaintiffs, Plaintiffs' Counsel, the Claims Administrator, Defendants, or Defendants' counsel based upon distributions made substantially in accordance with the Plan of Allocation or an order of the Court.

58.     <u>Plan of Allocation Not a Condition of Settlement</u>.  The allocation of the Net Settlement Fund among Authorized Claimants is a matter separate and apart from the Settlement between the Releasing Parties and the Released Parties, and between U.S. Bank on behalf of

itself (and the Covered Trusts to the extent ordered by the Court in the Judgment Order) and the Released Parties.  The Plan of Allocation proposed in the Notice is not a material term of this Stipulation, and it is not a condition hereof that any particular allocation be approved by the Court.  Any decision by the Court or by any appellate court concerning the Plan of Allocation or any other allocation shall not affect the validity or finality of the Settlement, and neither Plaintiffs nor Plaintiffs' Counsel may terminate this Stipulation or the Settlement based on any such ruling.

59.    <u>Access to Claim Information</u>.  Promptly upon request by either Defendant, Plaintiffs' Counsel shall cause the Claims Administrator to provide the requesting Defendant(s) with copies of submitted Proof of Claim Forms, whether submitted in paper form or electronically (although supporting documentation such as transactional records need not be provided).  The Proof of Claim Form will request claimants' authorization to release the Proof of Claim Form to Defendants and their counsel.  In the absence of such authorization, Plaintiffs' Counsel may direct the Claims Administrator to redact social security numbers, taxpayer identification numbers, and home addresses and telephone numbers.  Defendants shall reimburse the Claims Administrator for its reasonable costs actually incurred in making such redactions. The purpose of this provision is solely to provide Defendants with information they deem necessary to enforce the assignment of recoveries by Settlement Class members described in paragraph 39 above, and to support arguments concerning res judicata, release of claims, and the like in the event any Releasing Party attempts to assert Subject Claims against any of the Released Parties.  Defendants shall have no right to challenge the Claims Administrator's determinations with respect to distributions from the Net Settlement Fund.  The Parties will jointly apply to the Court for an Order extending the protections of the Stipulated Amended Protective Order entered in this Action on July 24, 2013 to the Proof of Claim Forms filed with the Claims Administrator, provided, however, that Released Parties are permitted to use the documents in connection with enforcing the assignment of recoveries by Settlement Class members described in paragraph 39 above and/or supporting arguments concerning res judicata,

release of claims, and the like in the event any Releasing Party attempts to assert Subject Claims against any of the Released Parties.  The Claims Administrator shall maintain the Proof of Claim Forms in accordance with its normal retention practices (*i.e.*, one year from the final distribution date for paper claim forms and three years from the final distribution date for electronic copies of claim forms) and shall notify all counsel identified in paragraph 76 before destruction of the Proof of Claim Forms in accordance with these guidelines.  The date for retention of the Proof of Claim Forms may be extended at the request of either Defendant or Plaintiffs' Counsel provided the requesting Party agrees to pay the costs of retaining the Proof of Claim Forms beyond the usual deadline for destruction.

## REQUESTS FOR EXCLUSION

60.    General.  Any person or entity that otherwise would be a member of the Settlement Class may exclude himself, herself, or itself by submitting a timely and valid request for exclusion in accordance with the instructions set forth in the Notice.  Unless otherwise ordered by the Court, any member of the Settlement Class that does not submit a timely and valid request for exclusion in accordance with such instructions shall be bound by the terms of this Stipulation and of the Settlement, including the Judgment Order and the releases, injunctions, and assignments contained therein.

61.    Timing of Requests for Exclusion.  To be timely, a request for exclusion must be submitted to the Claims Administrator so that it is received no later than 20 business days before the Final Approval Hearing.  A request for exclusion shall be deemed submitted when received by the Claims Administrator.

62.    Validity of Requests for Exclusion.  To be valid, a request for exclusion must comply with the instructions in the Notice, including by providing (i) a request to be excluded from the Settlement Class; (ii) the beneficial owner's name, address, and telephone number; (iii) the CUSIP of each Certificate purchased, acquired, sold, or disposed of; (iv) the outstanding face amount as of the date of each purchase, acquisition, sale, or disposition; (v) the per-unit price of each such transaction; (vi); the total amount of consideration paid or received in

connection with each such transaction; (v) the date of each such transaction; and (vi) the CUSIP and current face amount of each Certificate still held.

63.    Transmittal of Requests for Exclusion.  The Claims Administrator shall transmit electronic copies of each request for exclusion and any accompanying documents to the Parties' counsel (at the e-mail addresses set forth in paragraph 76 below) expeditiously, and in no event more than five calendar days after receipt.  Plaintiffs' Counsel shall certify, or cause the Claims Administrator to certify, that copies of all requests for exclusion and accompanying documents received by the Claims Administrator have been timely provided to Defendants' counsel as provided in this paragraph.  Plaintiffs' Counsel shall provide a list of all persons and entities that have requested exclusion to the Court reasonably in advance of the Final Approval Hearing.

**TERMINATION OF SETTLEMENT**

64.    Termination in Specified Circumstances.  Any Party may terminate the Settlement in its entirety by providing written notice to all Parties within 15 business days after any of the following: (i) the Court's refusal to enter the Preliminary Approval Order in any material respect; (ii) the Court's refusal to approve the Settlement in any material respect; (iii) the Court's refusal to enter the Judgment Order in any material respect; (iv) any reversal or material modification of the Judgment Order; (v) any reversal or material modification of the Judgment Order becoming Final; or (v) the occurrence of any other event that would prevent entry of the Judgment Order or otherwise prevent the Effective Date from occurring.

65.    Termination Pursuant to Supplemental Agreement.  As set forth in the Supplemental Agreement, Defendants, and each of them, shall have, in their sole and absolute discretion, the right to terminate the Settlement in its entirety if one or more specified thresholds are reached with respect to exclusions from the Settlement Class.  Defendants may exercise this right by providing a written notice of termination to Plaintiffs' Counsel up to and including the tenth business day prior to the Final Approval Hearing, after which Defendants' right shall lapse; *provided, however*, that in the event any court, on motion of Plaintiffs or a third party or *sua sponte*, orders allowance of any requests for exclusion that otherwise would have been untimely,

and any such additional allowed exclusions cause an agreed-upon threshold for termination to be reached or exceeded to a greater extent than previously, Defendants may provide a written notice of termination up to and including the tenth business day following any such court order, but in no event shall Defendants have the right to terminate the Settlement based on the Supplemental Agreement after the entry of the Final Approval Order.  Plaintiffs' Counsel shall have the right to communicate with the persons and entities requesting exclusion, and if, prior to the Final Approval Hearing, sufficient exclusion requests are withdrawn such that Defendants' right to terminate the Settlement would not have arisen had the withdrawn exclusion requests never been made, then Defendants' notice of termination shall be deemed withdrawn.  A request for exclusion may be withdrawn only by filing a written notice of withdrawal with the Court and serving a copy on all Parties.  Such filing and service may be effected by Plaintiffs' Counsel.

      66.    <u>Effect of Termination of Settlement</u>.  If the Settlement is terminated or the Effective Date otherwise does not occur, (i) the terms of this Stipulation and of the Settlement shall be null and void, with the exception of paragraphs 35, 41, 42, 44, 45, 67, 68 and 71-81, and any provisions of this Stipulation regarding the effect of termination; (ii) the Settlement Fund, plus any interest earned or appreciation thereon, less any Taxes paid or due with respect to such income or appreciation, and less Notice and Administration Costs and Tax Costs paid or payable, shall be returned to BANA within 15 business days after termination or the event that causes the Effective Date not to occur; (iii) the Parties shall be deemed to have reverted to the positions they occupied in the Action as of June 5, 2014; and (iv) this Stipulation and the facts of the Settlement shall not be admissible for any purpose other than to enforce paragraphs 35, 41, 42, 44, 45, 67, 68 and 71-81, and any provisions of this Stipulation regarding the effect of termination.

<strong><u>NO ADMISSIONS</u></strong>

      67.    Whether or not the Settlement is approved by the Court, and whether or not the Settlement is consummated or the Effective Date occurs, the fact and terms of this Stipulation,

any act performed or document signed in connection with the Settlement, and all negotiations, discussions, drafts, and proceedings in connection with the Settlement:

    (i)    shall not be offered as evidence of, or construed as, any admission, concession, or presumption with respect to the truth or falsity of any fact alleged by Plaintiffs, the validity or infirmity of any Claim asserted by Plaintiffs, or the validity or infirmity of any defense asserted by Defendants;

    (ii)    shall not be offered as evidence of, or construed as, any admission, concession, or presumption of any liability, wrongdoing, or fault of any kind on the part of any of the Released Parties;

    (iii)    shall not be offered as evidence of, or construed as, any admission or concession of any lack of merit in any aspect of the Claims asserted in the Action by any of the Releasing Parties; and

    (iv)    shall not be offered into evidence, or otherwise referred to, in any proceeding or forum as against any of the Parties or the Released Parties, except in connection with proceedings to enforce the terms of this Stipulation or of any judgment in the Action (including proceedings before or after the Effective Date to dismiss or stay any action asserting any of the Subject Claims); *provided, however*, that any of the Released Parties may file this Stipulation and/or any judgment in the Action in any proceeding to support an argument, defense, or counterclaim based on principles of res judicata, collateral estoppel, release and discharge, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar argument, defense, or counterclaim.

## MISCELLANEOUS PROVISIONS

68.    <u>No Liability of Released Parties</u>.  None of the Released Parties shall have any responsibility for, or liability relating to: (i) the provision of Notice or the publication of the Publication Notice; (ii) the establishment or administration of the Plan of Allocation; (iii) the establishment, maintenance, administration, or distribution of the Settlement Fund, the Net Settlement Fund, or the Escrow Account (other than BANA's obligation to deposit the Settlement Fund into the Escrow Account and other than Defendants' rights pertaining to Tax Costs and to Notice and Administration Costs in excess of $500,000 as set forth in paragraph 46 above); (iv) the allocation of any award of attorneys' fees or Litigation Expenses; (v) the receipt, review, determination, approval, disapproval, administration, calculation, or payment of claims on Proof of Claim Forms; (vi) the payment or withholding of Taxes or Tax Costs; (vii) the administration of the Settlement; or (viii) any losses incurred by any person or entity in connection with any of the foregoing matters.

69.    <u>No Transfer of Claims</u>.  Plaintiffs represent and warrant that they have not assigned, hypothecated, conveyed, transferred, or otherwise granted or given any interest in any of the Subject Claims to any other person or entity (except to the extent Subject Claims may have transferred by operation of law upon previous sales of Plaintiffs' Certificates).

70.    <u>Stay of Proceedings</u>.  Pending final approval by the Court of this Stipulation, all proceedings in this Action shall be stayed and Plaintiffs shall be barred and enjoined from prosecuting any of the Subject Claims against any of the Released Parties.

71.    <u>Entire Agreement</u>.  This Stipulation and the Supplemental Agreement constitute the entire agreement between Plaintiffs on the one hand and Defendants on the other hand concerning the Settlement.  No representations, warranties, or inducements have been made by any of the Plaintiffs to either of the Defendants, or by either of the Defendants to any of the Plaintiffs, concerning the Settlement other than those contained and memorialized in such documents.  This Stipulation and the Supplemental Agreement supersede any and all prior statements, representations, promises, or other agreements, written or oral, between Plaintiffs on

the one hand and Defendants on the other hand, with respect to the subject matter of this Stipulation and the Supplemental Agreement.

72.     <u>Exhibits</u>.  In the event of any conflict or inconsistency between the terms of this written Stipulation and the terms of any exhibit attached hereto, the terms of this written Stipulation shall prevail.

73.     <u>Waiver or Modification</u>.  This Stipulation may not be modified or amended except by a writing signed by all Parties or their respective counsel.  Any condition in this Stipulation may be waived by the Party entitled to enforce the condition only by a writing signed by that Party or its counsel.  The waiver by any Party of any breach of this Stipulation shall not be deemed a waiver of the breach by any other Party, or a waiver of any other prior or subsequent breach.  Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

74.     <u>Headings</u>.  The headings herein are for convenience only, do not have substantive or legal effect, and shall not be used as an aid in interpreting the Stipulation.

75.     <u>Jurisdiction of Court</u>.  The administration and consummation of the Settlement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of, *inter alia*, entering orders to enforce the terms of this Stipulation and of the Judgment Order, including but not limited to the releases, injunctions, and assignments provided for in the Judgment Order.

76.     <u>Notices</u>.  Any notice to any Party or its counsel that is required or permitted hereunder shall be effective only when received via hand delivery, facsimile transmission, or e-mail transmission by the Party's counsel at the following addresses, facsimile numbers, and e-mail addresses:

       <u>If to Plaintiffs</u>:

       Deborah Clark-Weintraub
       Max R. Schwartz
       SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, New York 10174
(212) 223-6444; (212) 223-6334 (Fax)
dweintraub@scott-scott.com
mschwartz@scott-scott.com

Julie Goldsmith Reiser
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W., #500
Washington, D.C. 20005
(202) 408-4600; (202) 408-4699 (Fax)
jreiser@cohenmilstein.com

Andrew L. Zivitz
Sharan Nirmul
KESSLER TOPAZ MELTZER & CHECK LLP
280 King of Prussia Road
Radnor, Pennsylvania  19087
(610) 667-7706; (610) 667-7056 (Fax)
azivitz@ktmc.com
snirmul@ktmc.com

If to BANA:

Marc T.G. Dworsky
James C. Rutten
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California  90071-1560
(213) 683-9100; (213) 687-3702 (fax)
marc.dworsky@mto.com
james.rutten@mto.com

- and -

David F. Graham
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois  60603
(312) 853-7000; (312) 853-7036 (fax)
dgraham@sidley.com

If to U.S. Bank:

Michael S. Kraut

> John M. Vassos
> MORGAN, LEWIS & BOCKIUS LLP
> 101 Park Avenue
> New York, New York  10178-0600
> (212) 309-6000; (212) 309-6001 (fax)
> mkraut@morganlewis.com
> jvassos@morganlewis.com

77.     Counterparts.  This Stipulation may be executed in one or more original, imaged, e-mailed, and/or faxed counterparts, all of which together shall constitute one and the same instrument.

78.     Successors and Assigns.  This Stipulation and the Judgment Order shall be binding on, and inure to the benefit of, the direct and indirect successors and assigns of the Parties and of the Settlement Class members (including but not limited to persons or entities that purchase or otherwise acquire, beneficially or otherwise, any of the Certificates from any of the Plaintiffs or Settlement Class members or their direct or indirect successors on or after the deadline for submitting requests for exclusion); *provided, however*, that this paragraph shall not alter or enlarge the previously stated definitions of Related Parties, Released Parties, and Releasing Parties, or the scope of the releases, injunctions, and assignments provided in paragraphs 36 through 39 above.

79.     Governing Law.  The construction, interpretation, operation, effect, and validity of this Stipulation, and of all documents necessary to effectuate it, shall be governed by the laws of the State of New York without regard to its conflict-of-laws principles.

80.     Ambiguities.  The Parties and their counsel jointly have drafted all parts of this Stipulation.  Any ambiguity shall be deemed to have been caused equally by all Parties.  No ambiguity shall be construed against any Party or Parties on the ground that it or they drafted the provision at issue or caused the ambiguity.

81.     Authority.  Each Party represents and warrants that (i) it is duly organized, validly existing, and in good standing under the laws of its jurisdiction of organization or charter; and (ii) it has full power and authority to execute and deliver this Stipulation and any related

Settlement documents, and to perform its obligations hereunder. Each Party further represents and warrants that it has taken all necessary action to authorize the execution, delivery, and performance of this Stipulation and of the transactions contemplated herein. Every person executing this Stipulation or any related Settlement documents on behalf of a Party or on behalf of another entity represents and warrants that he or she has full authority to do so and to bind the Party or other entity to the obligations set forth herein or therein.

82.     Further Assurances.  The Parties and their counsel shall cooperate in seeking Court approval of the Preliminary Approval Order and of the Settlement, and entry of the Judgment Order, and shall use reasonable efforts to agree upon and execute all such other documentation as may be reasonably required to obtain such approval and entry.

IN WITNESS HEREOF, THE PARTIES HAVE CAUSED THIS STIPULATION TO BE EXECUTED AS FOLLOWS:

For Plaintiffs Policemen's Annuity and Benefit Fund of the City of Chicago and Central States, Southeast and Southwest Areas Pension Fund; on behalf of themselves and all Settlement Class members:

_____

Name: Deborah Clark-Weintraub
Title: Partner, Scott+Scott, Attorneys at Law, LLP


For Plaintiffs Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity; Iowa Public Employees' Retirement System; and Arkansas Public Employees' Retirement System; on behalf of themselves and all Settlement Class members:

_____

Name:
Title:

Settlement documents, and to perform its obligations hereunder.  Each Party further represents and warrants that it has taken all necessary action to authorize the execution, delivery, and performance of this Stipulation and of the transactions contemplated herein.  Every person executing this Stipulation or any related Settlement documents on behalf of a Party or on behalf of another entity represents and warrants that he or she has full authority to do so and to bind the Party or other entity to the obligations set forth herein or therein.

      82.   <u>Further Assurances</u>.  The Parties and their counsel shall cooperate in seeking Court approval of the Preliminary Approval Order and of the Settlement, and entry of the Judgment Order, and shall use reasonable efforts to agree upon and execute all such other documentation as may be reasonably required to obtain such approval and entry.

     IN WITNESS HEREOF, THE PARTIES HAVE CAUSED THIS STIPULATION TO BE EXECUTED AS FOLLOWS:

For Plaintiffs Policemen's Annuity and Benefit Fund of the City of Chicago and Central States, Southeast and Southwest Areas Pension Fund; on behalf of themselves and all Settlement Class members:

_____
Name:
Title:

For Plaintiffs Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity; Iowa Public Employees' Retirement System; and Arkansas Public Employees' Retirement System; on behalf of themselves and all Settlement Class members:

_____
Name: Julie Goldsmith Reiser
Title:  Partner, Cohen Milstein Sellers & Toll PLLC

For Plaintiffs Vermont Pension Investment Committee; Washington State Investment Board; Arkansas Teachers Retirement System; Public Employees' Retirement System of Mississippi; and City of Tallahassee Retirement System; on behalf of themselves and all Settlement Class members:

Name:  Sharan Nirmul
Title:  Partner, Kessler Topaz Meltzer & Check, LLP


For Defendant Bank of America, N.A.:


Name:
Title:


For Defendant U.S. Bank National Association on behalf of itself in its individual and trustee capacities, and on behalf of the Covered Trusts to the extent ordered by the Court in the Judgment Order:


Name:
Title:

For Plaintiffs Vermont Pension Investment Committee; Washington State Investment Board; Arkansas Teachers Retirement System; Public Employees' Retirement System of Mississippi; and City of Tallahassee Retirement System; on behalf of themselves and all Settlement Class members:

_____

Name:
Title:

For Defendant Bank of America, N.A.:

_____

Name: Thomas G. Lehmann
Title: Senior Vice President

For Defendant U.S. Bank National Association on behalf of itself in its individual and trustee capacities, and on behalf of the Covered Trusts to the extent ordered by the Court in the Judgment Order:

_____

Name:
Title:

For Plaintiffs Vermont Pension Investment Committee; Washington State Investment Board; Arkansas Teachers Retirement System; Public Employees' Retirement System of Mississippi; and City of Tallahassee Retirement System; on behalf of themselves and all Settlement Class members:

Name: _____

Title:


For Defendant Bank of America, N.A.:

Name: _____

Title:


For Defendant U.S. Bank National Association on behalf of itself in its individual and trustee capacities, and on behalf of the Covered Trusts to the extent ordered by the Court in the Judgment Order:

Name: _____

Title: **Nicolas A. Valaperta**
    **Vice President**