## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| POLICEMEN'S ANNUITY AND BENEFIT FUND OF THE CITY OF CHICAGO, LABORERS' PENSION FUND AND HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, IOWA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, ARKANSAS PUBLIC EMPLOYEES' RETIREMENT SYSTEM, VERMONT PENSION INVESTMENT COMMITTEE, WASHINGTON STATE INVESTMENT BOARD, ARKANSAS TEACHER RETIREMENT SYSTEM, MISSISSIPPI PUBLIC EMPLOYEES' RETIREMENT SYSTEM , CITY OF TALLAHASSEE RETIREMENT SYSTEM, and CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND,<br><br>                       Plaintiffs,<br><br>  - against-<br><br><br>BANK OF AMERICA, NA (as Trustee Under Various Pooling and Servicing Agreements), and U.S. BANK NATIONAL ASSOCIATION (as Trustee Under Various Pooling and Servicing Agreements),<br><br>                    Defendants. | Civil Action No. 1:12-CV-02865-KBF<br><br>**Honorable Katherine B. Forrest** |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND <u>APPROVAL OF PROPOSED PLAN OF ALLOCATION</u>

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ..................................................................................1

II.   THE COURT HAS THE AUTHORITY TO FINALLY CERTIFY THE
      PROPOSED SETTLEMENT CLASS FOR PURPOSES OF SETTLEMENT ..................5

III.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND ....................9

      A.    The Settlement Was Reached After Protracted Arm's-Length
            Negotiations With the Assistance of an Experienced Mediator and
            Is Procedurally Fair ...........................................................................10

      B.    Application of the Grinnell Factors Supports Approval of the
            Proposed Settlement As Fair, Reasonable and Adequate.........................12

            1.    The Risks of Litigation Strongly Support Approval of the
                  Settlement............................................................................12

                  a.    Risks to Establishing Defendants' Liability .........................13

                  b.    Risks to Establishing Causation and Damages ....................15

            2.    The Risks of Maintaining the Class Action Through Trial
                  Support Approval of the Settlement............................................16

            3.    The Complexity, Expense and Likely Duration of the Litigation
                  Support Approval of the Settlement............................................16

            4.    The Stage of the Proceedings and Amount of Discovery Support
                  Approval of the Settlement.......................................................18

            5.    Defendants' Ability to Withstand a Substantially Greater
                  Judgment Does Not Suggest that the Settlement Is Unfair .........19

            6.    The Settlement Amount Is Reasonable in Light of the Best
                  Possible Recovery and All the Attendant Risks of Litigation.......19

            7.    The Reaction of the Settlement Class to Date Supports Approval
                  of the Proposed Settlement.......................................................20

IV.   THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE.................21

V.    THE SETTLEMENT NOTICE SATISFIES RULE 23 AND DUE PROCESS.................24

VI.   CONCLUSION .................................................................................................25

## TABLE OF AUTHORITIES

Page(s)

CASES

*In re Advanced Battery Techs. Sec. Litig.,*
  298 F.R.D. 171 (S.D.N.Y. 2014) .......................................................................... 9, 16, 18, 22

*Air Line Stewards & Stewardesses Ass'n v. Trans World Airlines, Inc.,*
  Nos. 79-2460, 79-2465 (7th Cir.) .......................................................................... 21

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) .................................... 6

*In re Am. Bank Note Holographics, Inc.,*
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................................... 23

*In re Am. Int'l Grp., Inc. Sec. Litig.,*
  689 F.3d 229 (2d Cir. 2012) .................................................................................. 6

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,*
  No. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .............. 19

*In re Bear Stearns Cos.,*
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................... 19

*Bellifemine v. Sanofi-Aventis U.S. LLC,*
  No. 07 Civ. 2207 (JGK), 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ................. 16

*BlackRock Allocation Target Shares: Series S Portfolio et al. v. U.S. Bank National Ass'n,*
  Index No. 651864/2014 (N.Y. Sup. Ct. N.Y. Cnty.) ........................................... 6, 11

*Carson v. Am. Brands, Inc.,*
  450 U.S. 79, 101 S. Ct. 993 (1981) ....................................................................... 13

*Charron v. Wiener,*
  731 F.3d 241 (2d Cir. 2013), *cert denied sub nom, Suarez v. Charron*, 134 S. Ct. 1941
  (2014) ..................................................................................................................... 12

*In re Citigroup Inc. Bond Litig.,*
  296 F.R.D. 147 (S.D.N.Y. 2013) ............................................................. 10, 17, 19, 25

*In re Citigroup Inc. Sec. Litig.,*
  965 F. Supp. 2d 369 (S.D.N.Y 2013) .................................................................... 12

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) ..................................................................... 10, 12, 19

*City of Providence v. Aeropostale, Inc.*,
No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......... 11, 12, 20

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ........................................................................................ 10, 11

*In re Enron Corp. Sec.*,
No. 02-md-1446 (S.D. Tex.) ............................................................................................ 21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009) ................................................................................................ 9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02 cv 3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .................... 16, 25

*In re Global Crossing Sec. and ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................... 13, 18, 19

*Goldberger v. Integrated Res. Inc.*,
209 F.3d 43 (2d Cir. 2000) .............................................................................................. 10

*Hicks v. Morgan Stanley & Co.*,
No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............................. 18

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ....................................................................................... 12

*In re Lehman Brothers Mortgage-Backed Sec. Litig.*,
Nos. 08-cv-6762, 09MD2017 (LAK) (S.D.N.Y.) ................................................................ 21

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005) ............................................................................................. 15

*Levitt v. J.P. Morgan Sec., Inc.*,
710 F.3d 454 (2d Cir. 2013) ............................................................................................... 7

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
No. 2: 10-cv-00302-MRP (MANx) (C.D. Cal.) ............................................................... 8, 21

*Maley v. Del Global Tech. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................................... 21

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................................................... 10

*Massiah v. MetroPlus Health Plan, Inc.*,
No. 11-cv-05669 (BMC), 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ............................. 20

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012) ............................................................................... 2

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ........................................................................ 10, 20

*NJ Carpenters Vacation Fund v. The Royal Bank of Scotland Grp.*,
  No. 08-cv-5093 (S.D.N.Y. Nov. 5, 2014) ........................................................... 21

*Padro v. Astrue*,
  No. 11-CV-1788 (CBA)(RLM), 2013 WL 5719076 (E.D.N.Y. Oct. 18, 2013) .............. 10, 24

*In re PaineWebber Ltd. P's hips Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ..................... 21

*Park v. The Thompson Corp.*,
  No. 05 Civ. 2931 (WHP), 2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008) .............. 16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  No. 05-MD-1720 (JG)(JO), 2013 WL 6510737 (E.D.N.Y. Dec. 13, 2013) .............. 22

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. The Bank of New York Mellon*,
  No. 11-5459 (S.D.N.Y. filed Aug. 5, 2011) ("*BNY Mellon*") .......................... *passim*

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. The Bank of New York Mellon*,
  Nos. 13-1776-cv, 13-1777-CV, 2014WL 7272269 (2d Cir. Dec. 23, 2014) ............ 2

*Shapiro v. JPMorgan Chase & Co.*,
  Nos. 11 Civ. 8331 (CM) (MHD), 11 Civ. 7961 (CM), 2014 WL 1224666 (S.D.N.Y.
  Mar. 24, 2014) ...................................................................................... *passim*

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
  No. 06 Civ. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) .............. 18

*Steinberg v. Nationwide Mut. Ins. Co.*,
  224 F.R.D. 67 (E.D.N.Y. 2004) ..................................................................... 6

*TBK Partners Ltd. v. Western Union Corp.*,
  675 F.2d 456 (2d Cir. 1982) ........................................................................ 8

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................................ 21

*Vargas v. Capital One Fin. Advisors*,
  No. 13 Civ. 3262, 2014 WL 960935 (2d Cir. Mar. 13, 2014) ............................ 24

*Wal-Mart Stores, Inc. v. U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................................. 9, 10, 18, 24

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 19, 2008) ........................... 25

**STATUTES**

15 U.S.C. 77aaa *et seq.*.................................................................................................................. 1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ...................................................................................................................*passim*

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs[1] and proposed Settlement Class representatives, through their counsel in the above-captioned litigation ("Action"), respectfully submit this memorandum of law in support of their motion for final approval of the proposed settlement of the Action ("Settlement") and for approval of the proposed plan for allocating the net settlement proceeds ("Plan of Allocation" or "Plan").[2]

## I.   PRELIMINARY STATEMENT

Subject to Court approval, Plaintiffs, on behalf of themselves and the Settlement Class, have agreed to settle all claims asserted in this Action[3] against Defendants Bank of America, N.A. ("BANA") and U.S. Bank National Association ("USB")−the former and current trustee of various residential mortgage-backed securities ("RMBS") trusts containing loans originated or acquired by Washington Mutual Bank and/or its affiliates ("WaMu").  Notably, if approved, the Settlement would be the first class action of its kind challenging an RMBS trustee's conduct.

The Settlement for $69 million in cash is an excellent result for the Settlement Class, particularly when viewed against the substantial risks and uncertainty of continued litigation.  At the time the Parties were negotiating the Settlement, the Parties had fully briefed class certification and were in the midst of a class certification evidentiary hearing.  Against this backdrop, argued and awaiting resolution before the Second Circuit was an interlocutory appeal in *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. The Bank of New York Mellon,* No. 1:11-cv-05459-WHP (S.D.N.Y. filed Aug. 5, 2011) ("*BNY Mellon*"), a case in which the Second Circuit was being asked to determine whether the TIA applied to RMBS

---

[1]  Unless otherwise indicated, capitalized terms shall have those meanings contained in the Stipulation of Settlement dated November 7, 2014 ("Stipulation").  ECF No. 295-1.

[2]   Plaintiffs also respectfully request that the Court finally certify the Settlement Class for purposes of carrying out the Settlement.  *See* §II below.  As set forth in its November 10, 2014 Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), the Court preliminarily certified the proposed Settlement Class pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  ECF No. 296 at 4.

[3]  Plaintiffs asserted claims for alleged breaches of the contracts (*i.e.*, pooling and servicing agreements ("PSAs")) governing the RMBS trusts at issue in the Action and for alleged violations of the federal Trust Indenture Act of 1939, as amended ("TIA"), 15 U.S.C. 77aaa *et seq.*

certificates governed by PSAs.[4]  The risk presented by continued litigation−and the value of the Settlement−became all the more apparent when, just six weeks after the Parties executed the Stipulation, the Second Circuit held that RMBS trusts governed by PSAs were exempt from the provisions of the TIA.[5]  Had the Settlement not been reached, Plaintiffs' TIA claims would have been dismissed, and the landscape of the litigation may have been significantly altered.

Certifying a class also posed difficult challenges.  In connection with Plaintiffs' motion for class certification, Defendants sought to exclude the opinion of Plaintiffs' damages and causation expert who proposed a class-wide methodology for determining the out-of-pocket losses for each class member caused by Defendants' alleged contract and TIA breaches. Because of the groundbreaking nature of this Action, the methodology developed by Plaintiffs' expert to establish causation and damages for Plaintiffs' claims was unique and had not been approved by any court in any prior litigation.  Indeed, this case involved many novel legal issues regarding the statutory and contractual duties of RMBS trustees.  Consequently, there was a very real risk that the Court would accept Defendants' arguments that causation and damages could not be demonstrated on a class-wide basis, or at all, and would deny Plaintiffs' motion for class certification.  Even if Plaintiffs were to receive a favorable ruling on their motion and maintain a certified class following Defendants' inevitable attempt to appeal the Court's ruling pursuant to Rule 23(f), they still faced numerous hurdles in establishing Defendants' liability and successfully opposing Defendants' anticipated summary judgment motions.

---

[4] The case also considered whether, under the Second Circuit's decision in *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co*., 693 F.3d 145 (2d Cir. 2012) ("*NECA*"), the representative plaintiffs had class standing to assert breach of duty claims against the trustee of an RMBS trust in which they did not invest.  The Court held that under the facts of the case, plaintiffs did not have standing to assert these claims on behalf of investors in RMBS trusts in which they did not invest.

[5] *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. The Bank of New York Mellon*, Nos. 13-1776-cv, 13-1777-CV, 2014WL 7272269 (2d Cir. Dec. 23, 2014).  A petition for rehearing and/or rehearing *en banc* of this decision, supported by numerous amici, has been filed and is currently pending.  *See BNY Mellon*, No. 13-1776-cv, Plaintiffs-Appellants' Petition for Rehearing and/or Rehearing *En Banc* dated January 20, 2015 (ECF No. 152-1).

As detailed in the Joint Declaration of Deborah Clark-Weintraub, Julie Goldsmith Reiser and Sharan Nirmul in Support of (A) Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of the Proposed Plan of Allocation and (B) Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration" or "Joint Decl.") submitted herewith, at the time the agreement to settle was reached, Plaintiffs and Class Counsel had extensively litigated the Action and had a thorough understanding of the strengths and weaknesses of the claims asserted on behalf of the Settlement Class.[6]

Prior to reaching the Settlement, Co-Lead Counsel had engaged in two-and-a-half years of extensive and complex litigation.  During this period, Plaintiffs and Class Counsel had, among other things: (i) conducted a thorough investigation into the claims asserted, including the review of numerous documents, articles and publications related to the Covered Trusts and the mortgage industry generally and the review of relevant Offering Documents, PSAs and Mortgage Loan Purchase Agreements; (ii) researched and drafted three comprehensive complaints; (iii) opposed two rounds of motions to dismiss; (iv) sought class certification; (v) opposed two partial summary judgment motions; (vi) conducted and nearly completed fact discovery, including the review/production of more than 3 million pages of documents from the Parties and third parties and conducted or defended a total of 33 party and non-party depositions; (vii) consulted with experts and consultants on issues such as damages, causation, statistical sampling, and re-underwriting, and worked with these experts and consultants in preparing reports in support of class certification; (viii) developed a plan and obtained the necessary loan tapes and mortgage files for the statistical re-underwriting of thousands of loan files related to the Covered Trusts;

---

[6]  The Joint Declaration is an integral part of this submission and for the sake of brevity, the Court is respectfully referred to this document for a detailed description of, *inter alia*, the procedural history of the Action; the nature of the claims asserted; the settlement negotiations; the value of the Settlement to the Settlement Class, as compared to the risks and uncertainties of continued litigation; the terms of the Plan; and a description of Class Counsel's efforts on behalf of the Settlement Class.  In addition, Plaintiffs are also contemporaneously submitting, on behalf of Class Counsel, the Memorandum of Law in Support of Class Counsel's Motion for Attorneys' Fees and Reimbursement of Litigation Expenses ("Fee Brief").  The Joint Declaration and Fee Brief are incorporated by reference herein.

and (ix) researched the applicable law with respect to the Settlement Class's claims and Defendants' potential defenses and other litigation issues.  Joint Decl. ¶¶ 15-47; Fee Brief § II. Following the May 9, 2014 class certification evidentiary hearing, which precipitated the Parties' settlement discussions, the case was scheduled for trial beginning on December 1, 2014.[7]

The foregoing efforts culminated, following the initial class certification hearing on May 9, 2014, with an intense and protracted mediation process facilitated by Robert A. Meyer, Esq., a principal of Loeb & Loeb LLP with extensive complex mediation experience.  The Parties' negotiations included a day-long mediation in May 2014, after which certain terms were agreed upon, followed by five additional months of intense negotiations, with the continued assistance of Mr. Meyer, at the conclusion of which the Parties were able finally to bridge their vastly different positions on several complex and novel issues to document the Settlement embodied in the Stipulation.   Joint Decl. ¶¶ 48-50.   Importantly, Plaintiffs−a group consisting of 10 sophisticated institutional investors who were actively involved in the prosecution and resolution of the Action−authorized Class Counsel to settle the Action on the terms embodied in the Stipulation and recommend that the Settlement be approved.   *Id*. ¶¶ 13, 52.  Plaintiffs also developed a plan of allocation, based on the theories of liability, causation and damages at issue in this Action, which also had never been attempted in any previous litigation, with the assistance of Bradford Cornell, Ph.D. of Compass Lexecon, a process that required several months of analysis.

In accordance with the Court's Preliminary Approval Order, the Court-appointed Claims Administrator, Kurtzman Carson Consultants LLC ("KCC"), commenced its mailing of the Notice and Proof of Claim form (together, the "Notice Packet") to all Settlement Class members

---

[7]  Upon the Parties reaching a settlement in principle, the Court terminated, without prejudice, Plaintiffs' pending class certification motion and Defendants' pending *Daubert* motion as moot.  *See* ECF Nos. 285 & 288.

that could be identified with reasonable effort as well as nominees on December 15, 2014.[8]  As of January 30, 2015, KCC has mailed a total of 5,297 Notice Packets.[9]  In addition, the Publication Notice was published once in *Investor's Business Daily* and transmitted over the *Business Wire*, and a settlement website was created.  Mailing Aff. ¶¶ 9, 11.  As ordered by the Court and stated in the Notice, requests for exclusion from the Settlement Class and objections to the Settlement are due to be received no later than February 11, 2015.  To date, there have been no objections and only two requests for exclusion have been received.  Sherwood Aff. ¶ 4.

Plaintiffs and Class Counsel firmly believe that the Settlement is eminently fair, reasonable, and adequate and provides a substantial result for the Settlement Class. Accordingly, for the reasons discussed herein and in the supporting papers filed herewith, Plaintiffs respectfully submit that (i) the Settlement should be finally approved by the Court; and (ii) the Plan of Allocation, which was developed in consultation with Plaintiffs' damages consulting expert, provides a fair and reasonable basis for allocating the net settlement proceeds among Settlement Class members, and therefore should also be approved.

## II.   THE COURT HAS THE AUTHORITY TO FINALLY CERTIFY THE PROPOSED SETTLEMENT CLASS FOR PURPOSES OF SETTLEMENT

For purposes of effectuating the Settlement, the Parties stipulated to certification of the following Settlement Class:

> Plaintiffs and every other person and entity that purchased or otherwise acquired any of the Certificates[10] at any time (including but not limited to any beneficial owners), and that (i) sold or otherwise disposed of the Certificates as of the date the Parties enter into the Stipulation, or (ii) did not sell or otherwise dispose of the Certificates as

---

[8]  *See* Affidavit of Justin R. Hughes Regarding (A) Mailing of the Notice and Proof of Claim Form; (B) Publication of the Publication Notice; (C) Establishment of the Settlement Website; and (D) Report on Requests for Exclusion Received to Date ("Mailing Aff."), previously filed with the Court (ECF No. 298), at ¶ 5.

[9]  *See* ¶ 2 of the Affidavit of Markham Sherwood Regarding (A) Notice Campaign and (B) Report on Requests for Exclusion Received to Date (the "Sherwood Aff.") attached as Exhibit 1 to the Joint Declaration.

[10]  The Certificates included in the Settlement Class are all Certificates issued by the fifty Covered Trusts that have been at issue in this litigation.  The Covered Trusts are identified in paragraph 7 of the Stipulation.

of the date the Parties enter into the Stipulation, but suffered an Out-Of-Pocket Loss on an investment in a Certificate as of such date.[11]

By its Preliminary Approval Order, the Court preliminarily certified the Settlement Class, "solely for purposes of effectuating the Settlement and for no other purpose," preliminarily finding that the Settlement Class met the requirements of Fed. R. Civ. P. 23(a) and (b)(3).  The Court also preliminarily certified Plaintiffs as representatives for the Settlement Class and appointed Plaintiffs' counsel as Class Counsel.  The Court has the authority to certify the proposed Settlement Class for purposes of effectuating the Settlement, and Plaintiffs respectfully request that the Court reaffirm its findings set forth in the Preliminary Approval Order that certification of the Settlement Class is consistent with the requirements of Fed. R. Civ. P. 23.

The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes.  *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238–39 (2d Cir. 2012).[12]  A Court should grant certification of a class for settlement purposes where the proposed class and class representative(s) satisfy the four requirements of Rule 23(a)−numerosity, commonality, typicality, and adequacy−as well as one of the three subsections of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-29, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).[13]  In making this determination, "courts must take a liberal rather than restrictive approach in determining whether the plaintiff satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class." *Steinberg v. Nationwide Mut. Ins.*

---

[11] The "Settlement Class" does not include (a) Defendants, JPMorgan Chase & Co., Washington Mutual Bank, and their respective parents, subsidiaries, and affiliates other than Investment Vehicles; (b) the FDIC as a potential successor to Washington Mutual Bank; (c) the named plaintiffs set forth in the July 16, 2014 Amended Complaint in the derivative action entitled *BlackRock Allocation Target Shares: Series S Portfolio et al. v. U.S. Bank National Ass'n*, Index No. 651864/2014 (N.Y. Sup. Ct. N.Y. Cnty.) (the "BlackRock Litigation"); and (d) any person or entity that submits a valid and timely request for exclusion from the Settlement Class in accordance with the requirements set forth in the Notice.

[12] Unless otherwise noted, all emphasis is added and internal citations and footnotes omitted.

[13] A discussion of the numerosity, commonality, typicality and adequacy criteria, as well as maintaining the Action under Rule 23(b)(3), is set forth in Plaintiffs' prior submission in support of preliminary approval of the Settlement (ECF No. 294, pp. 11-15) and is incorporated herein by reference.

*Co.*, 224 F.R.D. 67, 72 (E.D.N.Y. 2004).   Any doubts concerning the propriety of class certification should be resolved in favor of certification.  *See Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 464 (2d Cir. 2013).[14]

The Settlement Class includes over 1,000 separate institutional investors in certificates issued by 50 RMBS trusts for which Defendants BANA and USB each served as the Trustee. These 50 RMBS trusts each contain residential mortgages purportedly underwritten pursuant to underwriting guidelines promulgated by WaMu.   The central allegations in this Action were that these mortgages were pooled and warehoused by WaMu and then deposited into the RMBS trusts through common procedures employed by WaMu and the Trustee at the origination of each of the Covered Trusts.   WaMu, through an affiliated entity, also serviced the mortgages after they were deposited into the Covered Trusts, and BANA served as the Trustee of the Covered Trusts until it was succeeded beginning in February 2009 with respect to certain Covered Trusts and by 2010, with respect to all Covered Trusts, by USB.  Plaintiffs alleged that BANA, at a minimum, at the time of WaMu's bankruptcy in September 2008, knew that WaMu, as the servicer of the loans in the Covered Trusts, had breached its obligations under the Covered Trusts' governing agreements to cause defective loans in the Covered Trusts to be removed by WaMu, the depositor of the defective loans.  Plaintiffs sought to prove through discovery that BANA and USB, as successor to BANA, uniformly interpreted and applied the governing agreements for the Covered Trusts to render illusory any obligation on the part of the Trustee to take action with respect to known defaults by WaMu to cure defective loans.  This common course of conduct resulted in the Covered Trusts retaining defective loans that should have been removed but for the Trustees' breach of their alleged statutory and contractual obligations to the Settlement Class.   Plaintiffs also sought to prove that by the time of WaMu's bankruptcy and

---

[14] *See also Am. Int'l Grp.*, 689 F.3d at 237 (on appellate review, less deference is given to decisions denying class certification than to decisions granting certification).

acquisition by JPMorgan Chase, JPMorgan Chase had disclaimed any obligation to purchase defective loans from the Covered Trusts, a fact known to Defendants and to JPMorgan Chase as servicer, which further breached the Covered Trusts' governing documents.

There is no question that Plaintiffs and Class Counsel vigorously litigated this Action on behalf of the Settlement Class and have had every incentive to maximize the value of this Action to *all* Settlement Class members.  Although this Court's December 7, 2012 ruling on standing limited Plaintiffs' standing to those loan groups collateralizing or cross-collateralizing Plaintiffs' Certificates (thus limiting Plaintiffs' standing to loan groups within 34 of the 50 Covered Trusts put in issue by the pleadings), *see Policemen's Annuity*, 907 F. Supp. 2d 536, 545 (S.D.N.Y. 2012), Plaintiffs and Class Counsel continued to represent the interests of investors in all 50 Trusts and all appellate rights with respect to the Court's standing ruling were preserved. *See* Plaintiffs' Consolidated Third Amended Class Complaint dated October 31, 2013 (ECF No. 145).[15]  *See, also TBK Partners Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982) ("In order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action."); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-cv-00302-MRP(MANx) ("*Countrywide*"), December 5, 2013 Order (ECF No. 320), pp. 13-19 (certifying settlement class despite court's prior holding that named plaintiffs lacked standing over various claims they had brought).[16]

---

[15]  While limiting their claims in their complaint to comply with the Court's December 7, 2012 ruling, Plaintiffs never abandoned their additional claims stating that "[t]his amendment does not abandon claims pled in the [previous complaint], including claims asserted on behalf of other trusts, and loan pools, from which Plaintiffs did not purchases certificates."  ECF No. 145, p. 2, fn 1.

[16]  The Second Circuit's standing ruling in *BNY Mellon* does not require a different result as the decision's application to the particular facts of this case has not been addressed and, in this litigation, would not have been addressed until following the development of a complete factual record and a jury's findings on liability.

Given the foregoing, there are no conflicts between Plaintiffs and Settlement Class members that would preclude the Court from exercising its broad discretion to certify the Settlement Class. Further, Class Counsel are qualified, experienced and able to conduct the litigation on behalf of all Settlement Class members.[17] Accordingly, Plaintiffs request that the Court finally approve (i) certification of the Settlement Class for purposes of effectuating the Settlement pursuant to Fed. R. Civ. P. 23(a) and (b)(3); (ii) appointment of Plaintiffs as Settlement Class representatives; and (iii) appointment of Plaintiffs' counsel as Class Counsel.

## III.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE FINALLY APPROVED IN ALL RESPECTS

Fed. R. Civ. P. 23(e) provides that a class action settlement must be presented to the Court for approval. The Settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "A court determines a settlement's fairness by looking at both the settlement's terms and the negotiation process leading to the settlement." *Wal-Mart Stores, Inc. v. U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). In making this determination, courts should be mindful of the "strong judicial policy in favor of settlements, particularly in the class action context." *Id.*[18]

The Court may presume that a settlement negotiated at arm's-length by experienced counsel is fair and reasonable.[19] Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should

---

[17]   When assessing the adequacy requirement set forth in Fed. R. Civ. P. 23(a)(4), a court must inquire whether "'1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). *See Countrywide*, December 5, 2013 Order (ECF No. 320), pp. 17-18 (in concluding that named plaintiffs and their counsel were adequate class representatives, the court found that "[t]he putative class members, a majority of which are highly sophisticated investors, had ample opportunity to learn of this litigation, evaluate whether Named Plaintiffs adequately protected their rights, and pursue their own claims if desired").

[18]   *See also In re Advanced Battery Tech. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.").

[19]   *See Advance Battery*, 298 F.R.D. at 174 ("[a]bsent fraud or collusion, courts should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement").

not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974) *abrogated on other grounds by Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000). Because "'[t]he very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation', the court must not turn the settlement hearing 'into a trial or rehearsal of the trial'." *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972).[20]

### A.   The Settlement Was Reached After Protracted Arm's-Length Negotiations With the Assistance of an Experienced Mediator and Is Procedurally Fair

Courts may apply a presumption of fairness when a proposed settlement is the product of "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *See Wal-Mart*, 396 F.3d at 116; *Padro v. Astrue*, No. 11-CV-1788 (CBA)(RLM), 2013 WL 5719076, at *3 (E.D.N.Y. Oct. 18, 2013) ("Where the integrity of the negotiation process is preserved, a strong initial presumption of fairness attaches to the proposed settlement."). Moreover, if the negotiations leading to the settlement are fair "the forces of self-interest and vigorous advocacy will of their own accord produce the best possible result for all sides." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013).

This presumption of fairness applies here. The Parties negotiated the Settlement at arm's-length with the ongoing assistance of a highly-respected mediator with extensive experience in mediating complex litigation. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a mediator's involvement in settlement negotiations "helps to ensure that the

---

[20]   *See also In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("In deciding whether to approve a settlement, a court 'should not attempt to approximate a litigated determination of the merits of the case lest the process of determining whether to approve a settlement simply substitute one complex, time consuming and expensive litigation for another.'").

proceedings were free of collusion and undue pressure").[21]   In May 2014, as discovery was nearing completion, and following the initial class certification hearing, the Parties retained Mr. Meyer to assist in negotiating a resolution of the Action−a process that was long and arduous, and which included an in-person mediation session, for which detailed mediation statements were prepared, followed by countless hours of telephone conversations over the course of five months directly with Defendants and also facilitated by Mr. Meyer.  The negotiations were hard-fought by both sides and required the Parties' careful analysis of novel and complex factual and legal issues as well as consideration of related litigation.[22]  Joint Decl. ¶¶ 48-50.  Plaintiffs were involved in the negotiation process and approved the proposed resolution.  *See City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014) ("A settlement reached 'under the supervision and with the endorsement of a sophisticated institutional investor…is entitled to an even greater presumption of reasonableness.'").

Class Counsel who negotiated the Settlement have considerable experience prosecuting complex class action litigation, including cases involving MBS, and after more than two years of litigation, including an extensive investigation, significant motion practice and the substantial completion of fact discovery, were fully informed of the strengths and weakness of Plaintiffs' claims.  Joint Decl. ¶¶ 15-47, 52.  *See also D'Amato*, 236 F.3d at 85 (presumption of fairness applies where "the settlement resulted from 'arm's-length negotiations and…plaintiffs' counsel

---

[21]  *Xuechen Yang v. Focus Media Holding*, Ltd., 11 Civ. 9051 (CM) (GWG), 2014 WL 4401280, at *7 (Sept. 4, 2014) (finding participation of highly qualified mediator to "strongly support[] finding that negotiations were conducted at arm's length and without collusion").

[22]  Plaintiffs in the *BlackRock* Litigation (currently pending in this District) sued USB, as Trustee of 841 RMBS trusts, for ignoring systemic defects in the trusts and servicing of those trusts.  *See BlackRock* Litigation, Case No. 1:14-cv-09401 (S.D.N.Y.), Verified Derivative Complaint and Alternative Class Action Against U.S. Bank National Association for Breach of Contract; Violation of the Trust Indenture Act of 1939; Breach of Fiduciary Duty; Breach of Duty of Independence; and Negligence dated November 24, 2014 (ECF No. 1).  The Covered Trusts are among the 841 RMBS trusts being sued on in the *BlackRock* Litigation.  Accordingly, the proposed Settlement Class excludes the named plaintiffs in the Blackrock Litigation.

have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interest'"); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) ("[G]reat weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

**B.     Application of the *Grinnell* Factors Supports Approval of the Proposed Settlement As Fair, Reasonable and Adequate**

The Settlement is also substantively fair, reasonable and adequate.  *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381 (S.D.N.Y 2013) ("Courts in this Circuit analyze substantive fairness through the lens of the factors set forth in [*Grinnell*].").  In *Grinnell*, the Second Circuit identified the following nine factors to be considered in evaluating whether a proposed settlement warrants final approval:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463; *see also Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013), *cert denied sub nom, Suarez v. Charron*, 134 S. Ct. 1941 (2014).  In assessing a proposed settlement, "[n]ot every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances."  *Aeropostale*, 2014 WL 1883494, at *4. The Settlement easily satisfies the criteria set forth in *Grinnell*.  It is the considered judgment of Plaintiffs and Class Counsel that the Settlement represents a fair, reasonable and adequate resolution of the Action and warrants this Court's final approval.

**1.     The Risks of Litigation Strongly Support Approval of the Settlement**

It has long been recognized that complex class actions are difficult to litigate.  *Shapiro v. JPMorgan Chase & Co.*, Nos. 11 Civ 8331 (CM) (MHD), 11 Civ. 7961 (CM), 2014 WL

1224666, at *9-10 (S.D.N.Y. Mar. 24, 2014).   Here, the ordinary risks of litigation were heightened from the outset given the novel theories of liability and damages advanced.

In assessing the risks of litigation, the Court is not required to "decide the merits of the case[,] resolve unsettled legal questions," *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14, 101 S. Ct. 993, 998 (1981), or "foresee with absolute certainty the outcome of the case," *Shapiro*, 2014 WL 1224666, at *10.   "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement."   *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).   While Plaintiffs and Class Counsel believe that the claims asserted against Defendants have merit, they also recognize that there were considerable risks and uncertainties to pursuing the Action any further, and these risks and uncertainties were extensively considered by Class Counsel and informed their recommendation of the Settlement to Plaintiffs.

### a.       Risks to Establishing Defendants' Liability

Plaintiffs faced considerable risks to establishing Defendants' liability if the Action continued.   Joint Decl. ¶ 54.   In their motions to dismiss, Defendants asserted, among other things, that the TIA did not apply to the trusts at issue in this Action.   Although the Court denied Defendants' motion to dismiss on these grounds in 2013,[23] the Second Circuit in *BNY Mellon* recently held that the TIA does not apply to RMBS certificates governed by PSAs such as those at issue here.   Had the Action continued, Defendants would have moved for reconsideration of this Court's previous ruling based on this change in controlling law, and Plaintiffs would have been left with only their breach of contract claims going forward.

Significantly, Defendants possessed defenses to Plaintiffs' breach of contract claims that were unavailable with respect to the TIA claims.   For example, in order for Plaintiffs' claims to

---

[23] *See* Opinion and Order dated May 6, 2013 (ECF No. 74).

succeed, Plaintiffs would have to establish, among other things, that Defendants had "actual knowledge" that the WaMu-affiliated servicer was not discharging its obligation to put back defective loans in the Covered Trusts to its WaMu-affiliated seller, thereby triggering Defendants' obligation under the PSAs to: (i) provide the Servicer with written notice of its failure to perform its obligations under the PSAs (PSA §7.01(a)(ii)); (ii) declare an Event of Default based on the Servicer's failure to perform its obligations (*id*.); and (iii) act as a prudent person to enforce the Covered Trusts' repurchase rights (PSA §8.01(a)).

The TIA potentially required less demanding proof as to what constituted "actual knowledge" on the part of the Trustee to trigger obligations to take prudent action to protect the interest of the trusts.  As the Court recognized, while the PSA "shields the Trustee from a mandate to conduct an investigation, absent limited circumstances that are difficult to achieve[,]" those PSA obligations "must give way to the broader TIA obligations."  May 6, 2013 Opinion (ECF No. 74), p. 15.  One of these broader obligations is whether a notice of an event of default under the PSAs is constructive knowledge under the TIA or actual knowledge.  *Id.*  The potential for broader obligations under the TIA as to when a Trustee must act prudently to protect the interests of the Covered Trusts, served to undermine some of Defendants' arguments on liability that Plaintiffs had to prove on a trust-by-trust basis that the Trustee had actual and specific knowledge of defective loans in each Covered Trust.  Indeed, Plaintiffs argued that both industry-wide and WaMu-specific events had placed the Trustee on, at least constructive notice that the servicer and depositor were in default of their obligations to the Covered Trusts.

Throughout this Action, whether the standard was actual notice—on a specific trust-by-trust basis—or constructive notice, Defendants vigorously asserted that Plaintiffs failed to establish these facts.  Although Plaintiffs believe otherwise, this was a highly contested issue and was by no means definitive in Plaintiffs' favor.  In addition, Defendants would continue to point

to certain provisions in the governing agreements in support of their assertion that they had no implied duty to investigate a breach absent Certificateholder direction.

### b.    Risks to Establishing Causation and Damages

Plaintiffs also faced formidable challenges to establishing causation and damages.  Joint Decl. ¶ 55.  With respect to causation, Plaintiffs would be faced with rebutting Defendants' defense that market events (*e.g.*, the global, financial and real estate meltdowns) or other causes−not Defendants' inactions−caused the decline in the value of the Certificates.[24]   In addition, Defendants argued extensively in their class certification opposition, and through expert analysis, that even if the Trustees were on actual notice of events of default by the servicer or depositors for the Covered Trusts, Plaintiffs could not prove that any action taken by the Trustee could have avoided their losses.  Indeed, Defendants pointed to efforts by other trustees to force the repurchase of defective loans and the fact that such efforts have been mired in litigation for years with no benefit to the sellers, or current holders of trust certificates.  While Plaintiffs were confident that the extensive record developed through discovery and analysis of their experts would be sufficient to support their position, there was no guarantee that the Court, or a jury, would have agreed.

Defendants also presented robust attacks to Plaintiffs' proposed damages methodology. In two separate motions, Defendants moved to exclude the damages methodology of Plaintiffs' expert,  Michael  L.  Hartzmark,  Ph.D.,  on  both  substantive  and  procedural  grounds. Substantively, Defendants asserted that this methodology was unreliable and inconsistent with Plaintiffs' theory of liability, and also that Dr. Hartzmark was unqualified to offer a damages opinion in this case.  Procedurally, Defendants asserted that Dr. Hartzmark's rebuttal report, in which he refined his methodology in response to Defendants' criticisms, should be stricken as

---

[24]   *See, e.g., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174 (2d Cir. 2005) (the likelihood of demonstrating loss causation decreases if a "plaintiff's loss coincides with a marketwide phenomenon").

unrelated to his initial report.  Joint Decl. ¶¶ 38-39.  At the time of settlement, Defendants' motions had not been decided.  If Defendants succeeded in excluding testimony from Plaintiffs' expert, Plaintiffs' efforts to obtain class certification would have been severely compromised.

Further, even assuming the Court granted class certification, given the number of trusts involved, the complicated factual nature of these trusts and the heavy reliance on expert testimony, there would be real risks of jury confusion had the case proceeded to trial.  Indeed, a trial on these issues could have confused even the most sophisticated jury.[25]

### 2. The Risks of Maintaining the Class Action Through Trial Support Approval of the Settlement

As set forth above, in light of Defendants' vigorous attack on Plaintiffs' motion, there was significant uncertainty as to whether the Court would grant class certification.  Joint Decl. ¶¶ 32-47, 53.  Moreover, even if this Court had certified a class, no class certification decision is immune from a possible reversal either upon motion of a party, by the Court, or on appeal.  *See Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207 (JGK), 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) ("There is no assurance of obtaining class certification through trial, because a court can re-evaluate the appropriateness of certification at any time during the proceedings.").  The Settlement avoids any uncertainty with respect to these issues.

### 3. The Complexity, Expense and Likely Duration of the Litigation Support Approval of the Settlement

Courts consistently recognize that the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement []."  *Advanced Battery*, 298 F.R.D. at 175.  "[T]he more complex, expensive, and time consuming the future

---

[25]  Courts have recognized that when parties will likely rely on significant expert testimony and analysis, settlement is favored.  *See Park v. The Thompson Corp.*, No. 05 Civ. 2931 (WHP), 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02 cv 3400 (CM)(PED), 2010 WL 4537550, at *18 (S.D.N.Y. Nov. 8, 2010) ("The jury's verdict . . . would . . . depend on its reaction to the complex testimony of experts, a reaction that is inherently uncertain and unpredictable.").

litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Bond Litig.*, 08 Civ. 9522 (SHS), 296 F.R.D. 147, 155 (S.D.N.Y. Aug. 20, 2013).   Accordingly, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *Shapiro*, 2014 WL 1224666, at *8.

This Action was unquestionably complex.   From the outset, Plaintiffs and Class Counsel appreciated the magnitude and complexity of this litigation.   Class Counsel also understood that there was very limited precedent for Plaintiffs' claims and that no other court had ever sustained such claims; accepted Plaintiffs' theory of damages; certified a class action involving claims against a trustee of an RMBS trust; or addressed many of the novel legal and factual issues presented in the Action.   Developing and synthesizing these novel claims and Plaintiffs' complex damages methodology into an easily digestible format for the Court and a jury was, and would continue to be, extremely time-consuming and expensive.

The expense and delay of continued litigation also counsel in favor of the Settlement. Although Plaintiffs have litigated this Action for more than two-and-a-half years and were nearing the completion of fact discovery when the Settlement was reached, the costs associated with the completion of discovery, including extensive expert discovery, summary judgment motions, a lengthy and complicated trial and the inevitable post-trial appeals, would have been substantial.   This case was poised—as evident during class certification briefing and hearings— to be a battle of the experts which involved considerable cost.   Although Class Counsel remain confident that they would have been able to support their claims with qualified and persuasive expert testimony, jury reactions to competing experts are inherently difficult to predict, and Defendants did and would have almost certainly continued to retain highly experienced experts to argue their various defenses to liability.   Moreover, in establishing damages for the Covered Trusts, both sides would have devoted enormous resources in re-underwriting several thousand

mortgage loans in each of the Covered Trusts to arrive at a statistically significant sample to prove—or disprove in Defendants' case—that the loans in the Covered Trusts were defective.

In addition, throughout this Action, Defendants demonstrated an unwavering commitment to defend the Action through and beyond trial, if necessary, and are represented by highly capable counsel.  Unlike protracted litigation with an uncertain outcome, the proposed $69 million Settlement provides Settlement Class members with prompt, efficient, and guaranteed relief.  *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *6 (S.D.N.Y. May 1, 2008) ("the complexity, expense and likely duration of the litigation going forward weigh in favor of approval of the Settlement…Not only would Plaintiffs spend substantial sums in litigating this case through trial and appeals, it could be years before class members saw any recovery, if at all.").[26]

### 4. The Stage of the Proceedings and Amount of Discovery Support Approval of the Settlement

When courts "look [ ] to the 'stage of the proceedings and the amount of discovery completed,'" they "focus[] on whether the plaintiffs 'obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal.'" *Advanced Battery*, 298 F.R.D. at 177; *see also Wal-Mart*, 396 F.3d at 118.  This requirement "is intended to assure the [c]ourt 'that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them.'"  *Global Crossing*, 225 F.R.D. at 458.

Here, the Settlement was reached after more than two years of intensive litigation and discovery.  Joint Decl. ¶¶ 15-47; Fee Brief § II.  In sum, the knowledge and insight gained following years of investigating, developing and fine-tuning Plaintiffs' claims, conducting extensive motion practice and discovery, reviewing and analyzing millions of pages of evidence,

---

[26] *See also Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

deposing current and former employees, consulting with experts and the settlement negotiations and mediation process itself, provided Plaintiffs and Class Counsel with more than sufficient information to make intelligent, informed appraisals of the strengths and weaknesses of the Settlement Class's claims, Defendants' defenses, and the likelihood of obtaining a larger recovery for the Settlement Class had this Action continued.  *See In re Bear Stearns Cos*., 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) (parties had requisite knowledge to "gauge the strengths and weaknesses of their claims and adequacy of settlement" where they "conducted extensive investigations, obtained and reviewed millions of pages of documents, and briefed and litigated a number of significant legal issues").   Plaintiffs and Class Counsel clearly had a "sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy" of the Settlement.  *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006).

> **5.** **Defendants' Ability to Withstand a Substantially Greater Judgment Does Not Suggest that the Settlement Is Unfair**

While it appears that Defendants could withstand a greater judgment than the Settlement Amount, the events of recent years have proven that liquidity is never guaranteed.  In any event, this factor is generally not determinative when other factors weight in favor of approval, as they do here.  *Shapiro*, 2014 WL 1224666, at *11 ("[A] defendant is not required to 'empty its coffers' before a settlement can be found adequate." (quoting *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008)); *Citigroup*, 965 F. Supp. 2d 384 ("[W]hile the defendants' ability to pay more suggests a settlement might be unfair, 'this factor alone, does not suggest that the settlement is unfair.'").

> **6.** **The Settlement Amount Is Reasonable in Light of the Best Possible Recovery and All the Attendant Risks of Litigation**

Courts typically combine their analysis of the final two *Grinnell* factors.  *Grinnell*, 495 F.2d at 463.  *Accord Global Crossing*, 225 F.R.D. at 460.  In analyzing these factors, a reviewing

court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Aeropostale*, 2014 WL 1883494, at *9.  "The determination of whether a settlement amount is reasonable does not involve the use of a mathematical equation yielding a particularized sum." *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669 (BMC), 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012).  Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman*, 464 F.2d at  693; *see also JPMorgan Chase*, 2014 WL 1224666, at *11 (settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case").

The $69 million Settlement represents the first of its kind in a class action challenging the conduct of an RMBS trustee.  The "reasonableness" of this Settlement must be viewed in light of the significant hurdles presented during the course of the Action, especially the Second Circuit's recent ruling in *BNY Mellon* which, had the Action continued, would eliminate Plaintiffs' TIA claims and substantially diminish the possibility of recovering a greater amount from Defendants, if any recovery at all.  There can be no question that the Settlement−and the certain payment for the Settlement Class−represents an excellent result.

### 7.    The Reaction of the Settlement Class to Date Supports Approval of the Proposed Settlement

The class's reaction to a proposed settlement is also a factor in assessing its fairness and adequacy.  *See Xuechen Yang*, 2014 WL 4401280, at *7 ("A small number of objections may be viewed as indicative of the adequacy of the settlement.") (citation omitted).  As of January 30, 2015, KCC mailed 5,297 copies of the Notice to potential Settlement Class members and nominees, and published the Publication Notice in *Investor's Business Daily* and over the *Business Wire*.  *See* Sherwood Aff. ¶ 2; Mailing Aff. ¶ 9.  Pursuant to the Preliminary Approval

Order and as set forth in the notices, the deadline to request exclusion or to object to any aspect of the Settlement is February 11, 2015.  To date, there have been no objections and only two requests for exclusion have been received.  Sherwood Aff. ¶ 4.[27]

In sum, a review of the *Grinnell* factors, including the complexity, expense and delay of further litigation, the discovery completed and stage of the proceedings and the substantial risks of the Action, strongly supports a finding that the Settlement is fair, reasonable and adequate.

## IV.     THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE

Plaintiffs also seek the Court's approval of the proposed Plan (set forth in Appendix A of the Notice).  "To warrant approval, the plan of allocation must [] meet the standards by which the settlement was scrutinized – namely, it must be fair and adequate."  *Chavarria*, 875 F. Supp. 2d at 175.  Plans of allocation need not be tailored to fit each and every class member with "mathematical precision."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  Rather, broad classifications may be used in order to promote "[e]fficiency, ease of administration and conservation" of the settlement fund.  *Id.* at 133-35.  Generally, "[a] plan of allocation that reimburses class members based on the extent of their injuries is [] reasonable."  *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002).[28]  Plans of allocation which vary payouts based on the strength of claims have been repeatedly approved in the class action context.[29]

---

[27]   Plaintiffs will address any objections, as well as any requests for exclusion, received after the date of this submission in their reply brief to be filed with the Court on March 4, 2015.

[28]   *See, e.g., In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) ("A reasonable plan may consider the relative strength and values of different categories of claims.").

[29]   *See e.g., Air Line Stewards & Stewardesses Ass'n v. Trans World Airlines, Inc.*, Nos. 79-2460, 79-2465 (7th Cir.) (approving plan providing for allocation of a portion of the settlement funds to 92% of the settlement class whose claims had been dismissed by the court for lack of subject matter jurisdiction, but still pending for higher court review); *In re Enron Corp. Sec.*, No. 02-md-1446 (S.D. Tex.) (approving plan that provided only 10% of the settlement fund to claims that included weaker claims on the merits and securities not even asserted in the complaint but added to the settlement); *NJ Carpenters Vacation Fund v. The Royal Bank of Scotland Grp.*, No. 08-cv-5093 (S.D.N.Y. Nov. 5, 2014) (allocating settlement proceeds based on strength of the claims of class members by dividing them into three groups); *In re Lehman Brothers Mortgage-Backed Sec. Litig.*, Nos. 08-cv-6762, 09MD2017 (LAK) (S.D.N.Y.) (allocating 21% of settlement fund to dismissed tranches at discounted rate); *Maine State Ret.*

Moreover, "[w]hen evaluating the fairness of a Plan of Allocation, courts give weight to the opinion of qualified counsel.", 298 F.R.D. at 180.[30]  Here, the Plan was developed by Class Counsel in consultation with Dr. Bradford Cornell and reflects Plaintiffs' informed assessment of the strengths of Settlement Class member claims.  Plaintiffs and Class Counsel believe that the proposed Plan provides a fair and reasonable method to equitably distribute the Net Settlement Fund among eligible Settlement Class members.

The objective of the Plan is to equitably distribute the settlement proceeds to those Settlement Class members who have suffered an economic loss as a proximate result of the alleged wrongdoing and who submit valid Proof of Claim Forms that are approved for payment. The Plan generally estimates the amount of loss that an Authorized Claimant could claim for purposes of making pro-rata distributions from the Net Settlement Fund.[31]  Although not a formal damages study, the Plan reflects Dr. Cornell's detailed analysis, including a review of the relevant Prospectus Supplements, the structure of the Covered Trusts and Certificates at issue, the realized principal losses for each of the loan groups collateralizing the Covered Trusts, and a re-underwriting analysis performed on a set of similar RMBS trusts in order to correlate these results with each of the Covered Trusts based on loan types.

---

*Sys. v. Countrywide Fin. Corp.*, No. 10-cv-00302-MRP (MANx) (C.D. Cal.) (overruling objection to plan of allocation which allocated money to class members in different buckets based on the strength of their claims).

[30]   *See also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (JG)(JO), 2013 WL 6510737, at *27 (E.D.N.Y. Dec. 13, 2013) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."); *Chavarria*, 875 F. Supp. 2d at 175 ("In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel.  That is, as a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.").

[31]   The Plan contemplates making distributions to holders of Certificates issued by the Covered Trusts that were offered by the Prospectus Supplements for each securitization and regularly distribute principal to their holders. Certificates that do not regularly pay principal to holders, and are thus not eligible for a distribution under the Plan, include Certificates that do not have a principal balance at issuance and only make interest payments, and Certificates that only had a nominal amount of principal at issuance (e.g. $100), including those Certificates that primarily entitle holders to cash flows from other sources (such as prepayment penalties) rather than repayments of principal and residual certificates whose payments are typically subordinate to payments on the Certificates.

As explained in the Notice, the Plan recognizes that due to the seniority structure of the Covered Trusts and the fact that the Covered Trusts also suffered losses due to factors unrelated to the alleged defective mortgages, the risk that investors would not prevail on their claims varied depending upon the Certificate's position in the hierarchy of the Covered Trusts. Accordingly, Plaintiffs determined that it was appropriate to account for these varying risks by dividing the Net Settlement Fund into two pools from which investors could potentially recover. After taking into account the relative merits of the claims and defenses asserted in the Action and consulting with Dr. Cornell, Class Counsel determined that it was appropriate to allocate 25% of the Net Settlement Fund to "Pool A" and 75% of the Net Settlement Fund to "Pool B".

Specifically, distributions from Pool A will be made to all Authorized Claimants, giving credit to the possibility that all investors who held Certificates with out-of-pocket losses, whether they invested in subordinate tranches or senior tranches of the Covered Trusts, would be able to demonstrate a causal link between some or all of their out-of-pocket losses and Defendants' alleged wrongdoing.  Distributions from Pool A will reflect, in some cases, a litigation risk discount relating to standing based on Class Counsel's assessment of the risks to recovery on certain loan groups due to this Court's class standing ruling.[32]  On the other hand, distributions from Pool B will only be made to those Authorized Claimants who arguably faced less litigation risk in proving a causal connection between their out-of-pocket losses and Defendants' alleged wrongdoing and will be calculated pursuant to the formula contained on pages 4-9 of the Plan.[33]

---

[32] *See* Opinion and Order dated December 7, 2012 (ECF No. 46), at pp. 22-23 (holding that Plaintiffs' standing was limited to Certificates that were backed by loan groups that collateralized or cross-collateralized Plaintiffs' Certificates). To account for the reduced likelihood of success of the claims of certain Certificates, the Plan discounts the value of those claims by 90% for purposes of allocating the Net Settlement Fund among eligible Settlement Class members. *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429 (S.D.N.Y. 2001) ("Allocation formulas, including certain discounts for certain securities, are recognized as an appropriate means to reflect the comparative strengths and values of different categories of the claim.").

[33] In calculating distributions from Pool B, loss amounts for each Certificate will be reduced: (i) to account for the proportion of losses not caused by the alleged defective mortgages, by multiplying the "Recognized Loss Amount" by the "Certificate Recovery Percentage" (found in Table A of Plan) and (ii) to account for litigation risk related to

To date, there have been no objections to the Plan. Accordingly, for all of the reasons set forth herein and in the Joint Declaration, the proposed Plan of Allocation is fair and reasonable, and should be approved.

## V.      THE SETTLEMENT NOTICE SATISFIES RULE 23 AND DUE PROCESS

Notice of a settlement satisfies Rule 23(e) and due process where it fairly apprises "members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114; *Vargas v. Capital One Fin. Advisors*, No. 13 Civ. 3262, 2014 WL 960935, at *3 (2d Cir. Mar. 13, 2014). "Notice need not be perfect", but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *Padro*, 2013 WL 5719076, at *3; *see* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal."). Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder." *Wal-Mart*, 396 F.3d at 114.

Both the substance of the Notice as well as the method through which it was disseminated to Settlement Class members satisfies these standards. The Court-approved Notice includes all of the information required by Rule 23(c)(2)(B) and also provides recipients with information on how to submit a Proof of Claim Form in order to be potentially eligible to receive a distribution from the Settlement.

As of January 30, 2015, a total of 5,297 copies of the Notice have been mailed to potential Settlement Class Members and nominees. Sherwood Aff. ¶ 2. To initially disseminate the Notice Packets, KCC used a list received from Class Counsel containing contact information

---

standing by applying the "Litigation Risk Discounts" (found in Table E of the Plan). Tables referenced in the Plan can be found on the settlement website, www.wamutiasettlement.com.

for potential Settlement Class members.  Mailing Aff. ¶ 3; Joint Decl. ¶¶ 59-60.[34]  KCC also

mailed copies of the Notice Packet to the securities brokers, dealers, banks, and other nominees

contained in KCC's proprietary mailing database.  *Id.*  Since the initial mailing, KCC has mailed

Notice Packets to additional potential Settlement Class members provided to KCC by nominees.

Sherwood Aff. ¶ 2.  In addition, the Publication Notice was published in *Investor's Business*

*Daily* and transmitted over the *Business Wire* and a settlement website,

www.wamutiasettlement.com, providing access to downloadable copies of the Stipulation,

Notice, Proof of Claim Form and the various Tables referenced in the Plan, was established.

Mailing Aff. ¶¶ 9, 11.[35]

This combination of individual first-class mail to all Settlement Class members identified

with reasonable effort, supplemented by a summary notice in two widely-circulated publications

and an informative website, was "the best notice . . . practicable under the circumstances" and

satisfies the requirements of due process and Rule 23.  Fed. R. Civ. P. 23(c)(2)(B).[36]

## VI.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court certify the

Settlement Class for purposes of effectuating the Settlement and approve the proposed

Settlement and Plan of Allocation as fair, reasonable and adequate.

Dated:  January 30, 2015                         Respectfully submitted,


                                                 **KESSLER TOPAZ MELTZER & CHECK,**
                                                 **LLP**


                                                 *s\ Sharan Nirmul*

---

[34]   During discovery, Class Counsel assembled a list of potential Settlement Class members from their review of records obtained by Class Counsel as a result of subpoenas to numerous broker dealers and financial institutions.

[35]   Pursuant to the Preliminary Approval Order, the Stipulation, Notice and Proof of Claim Form were also to be posted on the U.S. Bank Trust Investor website.  *See* ECF No. 296, at ¶8(iv).

[36]   *See, e.g.*, *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. at 154; *In re Flag Telecom*, 2010 WL 4537550, at *13; *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 19, 2008).

Andrew L. Zivitz
Sharan Nirmul
Joshua E. D'Ancona
Tyler S. Graden
Jonathan F. Neumann
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
Email: azivitz@ktmc.com
        snirmul@ktmc.com
        jdancona@ktmc.com
        tgraden@ktmc.com
        jneumann@ktmc.com

*Counsel for Plaintiffs Vermont Pension Investment
Committee, Washington State Investment Board,
Arkansas Teacher Retirement System, City of
Tallahassee Retirement System, and Mississippi
Public Employees' Retirement System*

**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
Deborah Clark-Weintraub
Beth A. Kaswan
William C. Fredericks
Max Schwartz
Donald Broggi
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Tel.: (212) 223-6444
Fax: (212) 223-6334
Email: dweintraub@scott-scott.com
        bkaswan@scott-scott.com
        wfredericks@scott-scott.com
        mschwartz@scott-scott.com
        dbroggi@scott-scott.com

*Counsel for Plaintiffs Policemen's Annuity and
Benefit Fund of the City of Chicago and Central
States Southeast and Southwest Areas Pension Fund*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll
Julie Goldsmith Reiser
Joshua Devore
1100 New York Avenue, NW
Suite 500 West
Washington, D.C. 20005

-26-

Tel.: (202) 408-4600
Fax: (202) 408-4699
Email: stoll@cohenmilstein.com
        jreiser@cohenmilstein.com
        jdevore@cohenmilstein.com

- and-

Daniel B. Rehns
Kenneth M. Rehns
88 Pine Street
14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
Email: drehns@cohenmilstein.com
        krehns@cohenmilstein.com

*Counsel for Plaintiffs Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, Iowa Public Employees' Retirement System, and Arkansas Public Employees' Retirement System*